No. 22-3326

## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS,

*Petitioner-Appellant*,

v.

UNITED STATES,

*Respondent-Appellee.*

*In the Matter of the Application of the*
*Reporters Committee for Freedom of the Press to*
*Unseal Certain Search Warrant Materials*

On Appeal from the United States District Court for the District of Minnesota
No. 20-mc-82-PJS-TNL (Hon. Patrick J. Schiltz)

### Brief of Petitioner-Appellant

SUBMITTED BY:

Megan Graham
Samuelson Law, Technology &
  Public Policy Clinic
353 Law Building
UC Berkeley School of Law
Berkeley, CA 94720-7200
Tel: (510) 664-4381
mgraham@clinical.law.berkeley.edu

*Counsel for Petitioner-Appellant*

## SUMMARY OF THE CASE AND REQUEST FOR ARGUMENT

This appeal arises from the denial of an Amended Application to Unseal filed by Petitioner-Appellant the Reporters Committee for Freedom of the Press (the "Reporters Committee") that sought access to judicial records, including certain warrants and court orders issued pursuant to the Pen Register Act, 18 U.S.C. §§ 3121–27, and the Stored Communications Act, 18 U.S.C. §§ 2701–13, in the District of Minnesota (the "District").

Declining to reach the merits of the denial of access claims asserted in the Amended Application, the district court dismissed on jurisdictional grounds, holding that the Reporters Committee lacked standing to pursue such claims. According to the district court, the Reporters Committee did not establish an injury-in-fact because its inability to inspect the judicial records at issue is an injury common to every member of the public, and the Amended Application fails to expressly set forth how the Reporters Committee would use the records if they were unsealed. This holding is contrary to longstanding precedent of the U.S. Supreme Court and this Court making clear that members of the press and public, like the Reporters Committee, have standing to assert their First Amendment and common law rights of access to judicial records when such access is denied.

The Reporters Committee requests 10 minutes per side for oral argument given the importance of the issue presented in this appeal.

i

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eighth Circuit Rule 26.1A, Petitioner-Appellant Reporters Committee for Freedom of the Press states that it is an unincorporated 501(c)(3) nonprofit association of reporters and editors with no parent corporation and no stock.

Appellate Case: 22-3326     Page: 3     Date Filed: 01/27/2023 Entry ID: 5239878

# TABLE OF CONTENTS

**SUMMARY OF THE CASE AND REQUEST FOR ARGUMENT** ..................i

**CORPORATE DISCLOSURE STATEMENT** ........................................ ii

**TABLE OF CONTENTS** ...................................................................... iii

**TABLE OF AUTHORITIES** ................................................................v

**JURISDICTIONAL STATEMENT** .......................................................1

**STATEMENT OF ISSUE** .....................................................................2

**STATEMENT OF THE CASE** ..............................................................3

    I.    Background.........................................................................................5

    II.    Procedural History..........................................................................10

        A.    Initial Application and Early Proceedings ...........................10

        B.    Amended Application, Briefing, and Argument.................15

        C.    Order on Review and Request to Seek Reconsideration ...................17

**SUMMARY OF ARGUMENT** .............................................................**20**

**STANDARD OF REVIEW**...................................................................**23**

**ARGUMENT** ........................................................................................**24**

    I.    The Reporters Committee, like all members of the press and public, has a right to challenge a court's denial of access to judicial records. .............24

    II.    The Reporters Committee has standing to seek access to the records at issue in this case. ........................................................................29

        A.    The Reporters Committee, like any member of the public, suffers a cognizable injury-in-fact when it is denied access to a judicial record it is arguably entitled to inspect................................................29

Appellate Case: 22-3326    Page: 4    Date Filed: 01/27/2023  Entry ID: 5239878

B.    The Reporters Committee has a colorable right to inspect the SCA and PRA records to which it seeks access. ..........................................34

**CONCLUSION** ...................................................................................**39**

**CERTIFICATE OF COMPLIANCE** ....................................................**41**

**CERTIFICATE OF SERVICE** ............................................................**42**

**ADDENDUM** ......................................................................... **AD-i**

Appellate Case: 22-3326    Page: 5    Date Filed: 01/27/2023 Entry ID: 5239878

# TABLE OF AUTHORITIES

## CASES

*Brown v. Advantage Eng'g, Inc.*,
    960 F.2d 1013 (11th Cir. 1992) .................................................................20, 33

*Carlson v. United States*,
    837 F.3d 753 (7th Cir. 2016) .....................................................................passim

*Craig v. Harney*,
    331 U.S. 367 (1947) ........................................................................................27

*Dalton v. NPC Int'l, Inc.*,
    932 F.3d 693 (8th Cir. 2019) ........................................................................23

*Davis v. E. Baton Rouge Par. Sch. Bd.*,
    78 F.3d 920 (5th Cir. 1996) ........................................................21, 29, 31, 32

*Doe v. Pub. Citizen*,
    749 F.3d 246 (4th Cir. 2014) ....................................................................passim

*FEC v. Akins*,
    524 U.S. 11 (1998) ..........................................................................................33

*Flynt v. Lombardi*,
    782 F.3d 963 (8th Cir. 2015) ...........................................................23, 27, 30

*Ford v. City of Huntsville*,
    242 F.3d 235 (5th Cir. 2001) ........................................................................30

*FTC v. Std. Fin. Mgmt. Corp.*,
    830 F.2d 404 (1st Cir. 1987 .........................................................................27

*Globe Newspaper Co. v. Pokaski*,
    868 F.2d 497 (1st Cir. 1989).........................................................................28

*Globe Newspaper Co. v. Super. Ct.*,
    457 U.S. 596 (1982) .................................................................................passim

*Grae v. Corr. Corp. of Am.*,
    No. 22-5312, 2023 WL 179767 (6th Cir. Jan. 13, 2023)................................32

Appellate Case: 22-3326    Page: 6    Date Filed: 01/27/2023    Entry ID: 5239878

*Hartford Courant Co. v. Pellegrino*,
    380 F.3d 83 (2d Cir. 2004) ...............................................................38

*IDT Corp. v. eBay*,
    709 F.3d 1220 (8th Cir. 2013) .........................................................26

*In re Appl. of Leopold to Unseal Certain Elec. Surveillance Appls. & Ords.*
    (*Leopold*),
    964 F.3d 1121 (D.C. Cir. 2020).......................................9, 18, 34, 38

*In re Appl. of The Herald Co.*,
    734 F.2d 93 (2d Cir. 1984) ..............................................................28

Order, *In re Appl. of the Reporters Comm. for Freedom of the Press for Access*
    *to Certain Sealed Court Records*,
    No. 17-cv-169 (D. Md. Jan. 23, 2017), ECF No. 18 .........................9

Order, *In re Appl. of the Reporters Comm. for Freedom of the Press for Access*
    *to Certain Sealed Court Records*,
    No. 18-mc-85 (D. Minn. Nov. 29, 2018), ECF No. 6 ......................9

*In re Appl. of United States for Ord. Pursuant to 18 U.S.C. § 2703(d)*
    (*Appelbaum*),
    707 F.3d 283 (4th Cir. 2013) ...........................................................34

*In re Granick*,
    388 F. Supp. 3d 1107 (N.D. Cal. 2019).........................................31

*In re Iowa Freedom of Info. Council*,
    724 F.2d 658 (8th Cir. 1983) ......................................21, 22, 25, 28

*In re Search Warrant for Secretarial Area Outside Off. of Gunn* (*In re Gunn*),
    855 F.2d 569 (8th Cir. 1988) ..........................................25, 26, 34

*Jessup v. Luther*,
    227 F.3d 993 (7th Cir. 2000) ...........................................................20

*Nixon v. Warner Commc'ns, Inc.*,
    435 U.S. 589 (1978) .......................................................20, 22, 25

Appellate Case: 22-3326    Page: 7    Date Filed: 01/27/2023 Entry ID: 5239878

*Nor-W. Cable Commc'ns P'ship v. City of St. Paul*,
    924 F.2d 741 (8th Cir. 1991) ...........................................................24

*Pansy v. Borough of Stroudsburg*,
    23 F.3d 772 (3d Cir. 1994) ............................................................30

*Park v. Forest Serv. of U.S.*,
    205 F.3d 1034 (8th Cir. 2000) ......................................................23

*Press-Enterprise Co. v. Super. Ct.* (*Press-Enterprise I*),
    464 U.S. 501 (1984) .......................................................................25

*Press-Enterprise Co. v. Super. Ct.* (*Press-Enterprise II*),
    478 U.S. 1 (1986) ............................................................25, 26, 27

*Pub. Citizen v. DOJ*,
    491 U.S. 440 (1989) .......................................................................33

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) ..........................................................7, 20, 25

*Smith v. U.S. Dist. Ct.*,
    956 F.2d 647 (7th Cir. 1992) ........................................................27

*United States v. Aldawsari*,
    683 F.3d 660 (5th Cir. 2012) ........................................................33

*United States v. Aref*,
    533 F.3d 72 (2d Cir. 2008) ...........................................................27

*United States v. Brooklier*,
    685 F.2d 1162 (9th Cir. 1982) ......................................................28

*United States v. Criden*,
    675 F.2d 550 (3d Cir. 1982) ........................................................28

*United States v. Eagleboy*,
    200 F.3d 1137 (8th Cir. 1999) ........................................................7

*United States v. Jones*,
    574 F.3d 546 (8th Cir. 2009) ..........................................................7

Appellate Case: 22-3326    Page: 8    Date Filed: 01/27/2023    Entry ID: 5239878

*United States v. Valenti*,
   987 F.2d 708 (11th Cir. 1993) ........................................................34

*Wash. Post v. Robinson*,
   935 F.2d 282 (D.C. Cir. 1991) .......................................................26

*Webster Groves Sch. Dist. v. Pulitzer Pub. Co.*,
   898 F.2d 1371 (8th Cir. 1990) ..................................................27, 31

*Wilkinson v. United States*,
   440 F.3d 970 (8th Cir. 2006) .........................................................23

## STATUTES

5 U.S.C. § 552 ...................................................................................16

18 U.S.C. §§ 2701–13 .........................................................................5

18 U.S.C. § 2703 .......................................................................3, 5, 6

18 U.S.C. § 2705 .................................................................................6

18 U.S.C. § 3117 .................................................................................3

18 U.S.C. §§ 3121–27 .........................................................................5

18 U.S.C. § 3123 ............................................................................3, 5

18 U.S.C. § 3127 .................................................................................5

28 U.S.C. § 1291 .................................................................................1

28 U.S.C. § 1331 .................................................................................1

D.C. Code § 29-1105 .....................................................................7, 31

D.C. Code §§ 29-1101–27 ...................................................................7

Electronic Communications Privacy Act of 1986,
   Pub. L. No. 99-508, 100 Stat. 1848 (1986) .....................................5

Appellate Case: 22-3326     Page: 9     Date Filed: 01/27/2023 Entry ID: 5239878

## RULES

D. Minn. L.R. 49.1 ...................................................................................6

Fed. R. Crim. P. 41 ...................................................................................3

## OTHER AUTHORITIES

Bruce D. Brown & Gabe Rottman, *Everything We Know About the Trump-Era Records Demands from the Press*, Lawfare (July 6, 2021), https://www.lawfareblog.com/everything-we-know-about-trump-era-records-demands-press [https://perma.cc/K3VG-XDZN] ............................6, 7

Bruce D. Brown & Gabe Rottman, *Opinion: A Major Milestone in the Fight for Press Freedom*, CNN (Oct. 28, 2022), https://www.cnn.com/2022/10/28/opinions/press-freedom-policy-change-brown-rottman/index.html [https://perma.cc/SY9B-TMGV].............................8

Charlie Savage, *Garland Formally Bars Justice Dept. From Seizing Reporters' Records*, N.Y. Times (Oct. 26, 2022), https://www.nytimes.com/2022/10/26/us/politics/justice-department-reporters.html [https://perma.cc/QE9J-PYFX] ...................................................8

Devlin Barrett, *Justice Dept. Issues Rules for Leak Investigations*, Wash. Post (Oct. 26, 2022), https://www.washingtonpost.com/national-security/2022/10/26/garland-reporter-leak-investigations/ [https://perma.cc/SQ5M-QD3N].........................8

Appl., *In re Appl. of the Reporters Comm. for Freedom of the Press to Unseal Certain Search Warrant Appls. & Related Judicial Docs.*, No. 18-mc-320-KPF (S.D.N.Y. July 3, 2018), ECF No. 1 ..............................10

Joint Status Letter, *In re Appl. of the Reporters Comm. for Freedom of the Press to Unseal Certain Search Warrant Appls. & Related Judicial Docs.*, No. 18-mc-320-KPF (Mar. 31, 2020), ECF No. 26.........................................10

Letter from Bruce D. Brown & Gabe Rottman et al. to Hon. Charles Grassley, *Re: Support for S. 4373, the NDO Fairness Act* (July 19, 2022), https://www.documentcloud.org/documents/22089707-2022-07-19-senate-ndo-fairness-act-letter [https://perma.cc/FS2V-5ADJ]....................................8

Letter from Reporters Comm. for Freedom of the Press et al. to U.S. Senate, *Re: Support S. 2457, the Protect Reporters from Excessive State Suppression, or PRESS, Act* (Dec. 7, 2022), https://www.rcfp.org/briefs-comments/rcfp-senate-press-act-letter/ [https://perma.cc/3Y54-XT9Q] .........................................................8

*Public Access to Court Records (PACER)*, U.S. Dist. Ct. for Dist. of Minn., https://www.mnd.uscourts.gov/public-access-court-records-pacer [https://perma.cc/4AYL-LHPJ] ...................................................................13

*Steering Committee*, Reporters Comm. for Freedom of the Press, https://www.rcfp.org/steering-committee/ [https://perma.cc/S2NN-VG2B] ....7

Appellate Case: 22-3326    Page: 11    Date Filed: 01/27/2023 Entry ID: 5239878

# JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331.

This Court has jurisdiction under 28 U.S.C. § 1291, which provides appellate review for all "final decisions of the district courts of the United States." On October 11, 2022, the district court entered an order dismissing the case for lack of jurisdiction, which is a final decision. *See* JA-122–JA-133; R. No. 54, at 1–12.[1]

On October 31, 2022, pursuant to the district court's Local Rule 7.1(j), Petitioner-Appellant the Reporters Committee for Freedom of the Press (the "Reporters Committee") requested permission to file a motion for reconsideration. *See* JA-135–JA-137, R. No. 56, at 1–3. On November 1, 2022, the district court denied that request. *See* JA-138–JA-141; R. No. 57, at 1–4.

On November 4, 2022, the Reporters Committee timely appealed to this Court pursuant to Federal Rules of Appellate Procedure 3 and 4. *See* JA-5; R. No. 58. The Reporters Committee appeals the district court's order dismissing the Amended Application to Unseal for lack of jurisdiction. *See* JA-122–JA-133; R. No. 54, at 1–12.

---

[1] All citations in this brief beginning with "JA" are to the Joint Appendix.

1

# STATEMENT OF ISSUE

In accordance with Federal Rule of Appellate Procedure 28(a)(5) and Eighth

Circuit Rule 28A(i)(2), the Reporters Committee provides the following statement

of the issue for review:

1. Whether the district court erred in concluding that the Reporters

   Committee lacked standing to seek the relief requested in its Amended

   Application to Unseal, including the unsealing of certain electronic

   surveillance applications, supporting materials, and corresponding

   orders, and the docketing and unsealing of warrant and surveillance

   order applications that are denied. *See* JA-122–JA-133; R. No. 54,

   at 1–12.

The most apposite cases for this issue are: (1) *Globe Newspaper Co. v.

Super. Ct.*, 457 U.S. 596 (1982); (2) *In re Iowa Freedom of Info. Council*, 724 F.2d

658 (8th Cir. 1983); (3) *Carlson v. United States*, 837 F.3d 753 (7th Cir. 2016)

(4) *Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014).

2

## STATEMENT OF THE CASE

This litigation arises out of an effort by Petitioner-Appellant the Reporters Committee for Freedom of the Press (the "Reporters Committee") to obtain access to certain warrant and surveillance order applications filed by the government, their supporting materials, and the resulting warrants and court orders,[2] as well as changes to docketing and sealing practices for denied applications sought under five specific authorities[3] in the District of Minnesota (the "District"). Given its longstanding work both to vindicate the presumptive right of the press and public to observe judicial proceedings and inspect judicial records, and to advocate for robust protection for journalists' work product—including records of their electronic communications with sources—from compelled disclosure to the government, the Reporters Committee has an acute interest in the kinds of judicial records at issue, and regularly seeks to unseal them.

After the Reporters Committee filed its initial Application, the district court directed the Reporters Committee, the District's Clerk's Office, and the Office of

---

[2] The Application and Amended Application principally focused on requests for warrants and orders under the Stored Communications Act ("SCA"), 18 U.S.C. § 2703, and orders under the Pen Register Act ("PRA"), 18 U.S.C. § 3123.

[3] Those authorities are (1) warrants pursuant to Federal Rule of Criminal Procedure 41; (2) SCA warrants pursuant to 18 U.S.C. § 2703(A)–(B); (3) tracking device warrants and court orders pursuant to 18 U.S.C. § 3117; (4) SCA court orders pursuant to 18 U.S.C. § 2703(d); and (5) orders for pen register and trap and trace devices pursuant to 18 U.S.C. § 3123.

Appellate Case: 22-3326    Page: 14    Date Filed: 01/27/2023 Entry ID: 5239878

the United States Attorney for the District of Minnesota (the "USAO") to meet and confer and attempt to narrow the issues in the litigation. Thereafter, following months of negotiations and per the district court's direction, the Reporters Committee filed an Amended Application addressed only to the issues that remained in dispute.

On October 11, 2022, the district court issued an order dismissing without prejudice the Reporters Committee's Amended Application for lack of jurisdiction. *See* JA-122–JA-133; R. No. 54, at 1–12. Specifically, the district court held that the Reporters Committee's "interest in observing and understanding the work of federal trial courts" did not "suffice to establish injury-in-fact" where the Reporters Committee had not detailed its "inten[t] to review the materials they petitioned to unseal." JA-127–JA-129; R. No. 54, at 6–8. The Reporters Committee requested permission to file a motion for reconsideration on October 31, 2022; that request was denied the next day. *See* JA-135–JA-141; R. No. 57, at 1–4.

The Reporters Committee timely appealed on November 4, 2022. JA-5; R. No. 58.

4

## I. Background

The Pen Register Act ("PRA"), 18 U.S.C. §§ 3121–27,[4] governs judicial authorization for government use of pen register and trap and trace devices (collectively, "pen/trap devices"). 18 U.S.C. § 3123. Pen/trap devices record metadata—such as telephone numbers, email addresses, and other routing information—transmitted by wire or electronic communications carriers. 18 U.S.C. § 3127(3)–(4). The PRA permits collection of metadata on a forward-looking basis. *See id.* (describing pen/trap devices as collecting information as it is transmitted). While the PRA contemplates unsealing court orders authorizing the government to use pen/trap devices when unsealing is "ordered by the court," 18 U.S.C. § 3123(d), unsealing is uncommon in practice.

The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701–13,[5] provides, among other things, statutory mechanisms for the government to seek to compel third-party electronic communication service and remote computing service providers to disclose the contents of stored wire and electronic communications, as well as records and other information pertaining to subscribers. 18 U.S.C. § 2703(a)–(d). These mechanisms include orders under 18

---

[4] Enacted as Title III of the Electronic Communications Privacy Act of 1986 ("ECPA"), Pub. L. No. 99-508, 100 Stat. 1848 (1986).

[5] Enacted as Title II of ECPA, Pub. L. No. 99-508, 100 Stat. 1848 (1986).

Appellate Case: 22-3326     Page: 16     Date Filed: 01/27/2023 Entry ID: 5239878

U.S.C. § 2703(d) ("2703(d) orders"), subpoenas, and warrants. *See* 18 U.S.C.

§ 2703(a), (b)(1)(A)–(B), (c)(1)(A), (c)(2), (d). The SCA does not generally

require the government to give notice to people affected by 2703(d) orders, *see* 18

U.S.C. § 2703(c)(3), (d), and it gives the government tools to prevent companies

from providing notice of SCA warrants to their affected customers "for such period

as the court deems appropriate," *see* 18 U.S.C. § 2705(b). Though the SCA does

not require sealing, under District of Minnesota Local Rule 49.1(c)(1)(B)(iii),

2703(d) applications, supporting documents, and orders must be filed under seal.

The Local Rule contemplates unsealing of SCA materials by court order, D. Minn.

L.R. 49.1(c)(1), but such unsealing is uncommon in practice.

Law enforcement use of warrants and orders under the PRA and SCA to

obtain electronic communications records directly affects journalists reporting on

matters of public concern. For example, in 2020 and 2021, the U.S. Department of

Justice ("DOJ") seized non-content email records of eight reporters working at *The

New York Times*, CNN, and *The Washington Post*. *See* Bruce D. Brown & Gabe

Rottman, *Everything We Know About the Trump-Era Records Demands from the

Press*, Lawfare (July 6, 2021).[6] Because DOJ, among other things, initially

obtained a gag order to prevent Google (the *Times*'s email provider) from notifying

---

[6] For authorities available on the internet, URLs appear in the Table of Authorities.
All sites were last visited on January 26, 2023.

6

the news outlet, the affected reporters at the *Times*, CNN, and the *Post* only learned that their communications records has been seized by the government many months after the fact. *Id.*

The Reporters Committee is an unincorporated nonprofit association[7] dedicated to defending the First Amendment and newsgathering rights of the press.[8] The Reporters Committee is governed by a Steering Committee consisting largely of reporters and editors. *See Steering Committee*, Reporters Comm. for Freedom of the Press. The Reporters Committee has, since its founding in 1970, been a leading advocate for the rights of the press and public to attend judicial proceedings and inspect judicial records—rights critical to journalists' ability to gather news and keep the public informed about the work of the judicial branch, *see Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) (recognizing that journalists act as "surrogates for the public" in reporting on judicial matters).

---

[7] The Reporters Committee is an unincorporated nonprofit association organized under the laws of the District of Columbia, *see* D.C. Code §§ 29-1101–27. It is a "legal entity distinct from its members and managers" with "the same powers as an individual to do all things necessary or convenient to carry on its purposes." D.C. Code § 29-1105.

[8] The Reporters Committee respectfully requests that the Court take judicial notice of the publicly available information cited in this brief regarding the Reporters Committee and prior unsealing litigation brought by the organization. *See United States v. Jones*, 574 F.3d 546, 551 (8th Cir. 2009) (courts may take judicial notice of court records); *United States v. Eagleboy*, 200 F.3d 1137, 1140 (8th Cir. 1999) (courts may take judicial notice of information like public records and judicial opinions for the first time on appeal).

7

Another core component of the Reporters Committee's mission is the protection of journalists' work product—including reporter-source communications and records of those communications—from compelled disclosure, including by law enforcement. Indeed, the Reporters Committee has played a lead role in shaping federal policy on law enforcement use of subpoenas, warrants, and other means to obtain journalists' electronic communications records and other work product. *See, e.g.*, Charlie Savage, *Garland Formally Bars Justice Dept. From Seizing Reporters' Records*, N.Y. Times (Oct. 26, 2022); Devlin Barrett, *Justice Dept. Issues Rules for Leak Investigations*, Wash. Post (Oct. 26, 2022); Bruce D. Brown & Gabe Rottman, *Opinion: A Major Milestone in the Fight for Press Freedom*, CNN (Oct. 28, 2022); Letter from Reporters Comm. for Freedom of the Press et al. to U.S. Senate, *Re: Support S. 2457, the Protect Reporters from Excessive State Suppression, or PRESS, Act* (Dec. 7, 2022); Letter from Bruce D. Brown & Gabe Rottman et al. to Hon. Charles Grassley, *Re: Support for S. 4373, the NDO Fairness Act* (July 19, 2022).

To further these two components of its mission, and to better understand how frequently and under what circumstances the government seeks (and courts issue) warrants and orders under the PRA and SCA, the Reporters Committee has repeatedly—and successfully—filed actions to vindicate its right of access to sealed warrants, orders, and related judicial records in PRA and SCA matters. For

8

example, the Reporters Committee has successfully applied to unseal such materials in prosecutions arising from alleged unauthorized "leaks" of information to journalists. *See, e.g.*, Order, *In re Appl. of the Reporters Comm. for Freedom of the Press for Access to Certain Sealed Court Records*, No. 18-mc-85 (D. Minn. Nov. 29, 2018), ECF No. 6 (granting the Reporters Committee's application for access to PRA and SCA orders in the criminal investigation of Terry J. Albury); Order, *In re Appl. of the Reporters Comm. for Freedom of the Press for Access to Certain Sealed Court Records*, No. 17-cv-169 (D. Md. Jan. 23, 2017), ECF No. 18 (granting the Reporters Committee's application for access to PRA and SCA orders, as well as associated sealed dockets, in the criminal investigation of Thomas Drake). And the Reporters Committee has successfully pursued litigation that has resulted in system-wide changes to improve public access to PRA and SCA filings in the District of Columbia and the Southern District of New York. *In re Appl. of Leopold to Unseal Certain Elec. Surveillance Appls. & Ords.* (*Leopold*), 964 F.3d 1121, 1135 (D.C. Cir. 2020) (reversing district court's denial, on the merits, of separate petitions brought by journalist Jason Leopold and the Reporters Committee seeking an order requiring that dockets and docket entries reflecting SCA and PRA applications and orders be made public, and that any future applications and orders of those kinds be reflected on public dockets and either filed publicly or unsealed after a period of time); Appl., *In re Appl. of the*

Appellate Case: 22-3326    Page: 20    Date Filed: 01/27/2023 Entry ID: 5239878

*Reporters Comm. for Freedom of the Press to Unseal Certain Search Warrant Appls. & Related Judicial Docs.*, No. 18-mc-320-KPF (S.D.N.Y. July 3, 2018), ECF No. 1 (seeking to unseal SCA warrant materials); Joint Status Letter, *In re Appl. of the Reporters Comm. for Freedom of the Press to Unseal Certain Search Warrant Appls. & Related Judicial Docs.*, No. 18-mc-320-KPF (Mar. 31, 2020), ECF No. 26 (describing changes to the way SCA and PRA materials are docketed).

The Reporters Committee initiated the instant case to obtain access to the same types of sealed judicial records in the District—records in which the Reporters Committee, and other members of the press and public, have an acute interest.

## II. Procedural History

### A. Initial Application and Early Proceedings

Explaining that it, "like all members of the public and press, has a strong interest in observing and understanding the consideration and disposition of matters by United States District Courts," and "a particular interest in obtaining access to court documents concerning federal government requests for judicial authorization to collect electronic communications records under the SCA," JA-7; R. No. 1, at 2, the Reporters Committee filed this case on December 8, 2020, *see* JA-2; R. No. 1. In its initial Application, *see* JA-6–JA-11; R. No. 1, at 1–6, the Reporters Committee sought, *inter alia*, to unseal (1) all SCA warrant applications,

Appellate Case: 22-3326   Page: 21   Date Filed: 01/27/2023 Entry ID: 5239878

supporting materials, and resulting warrants in inactive investigations from

January 1, 2018 until the district court entered an order; and (2) all docket sheets

reflecting SCA warrant cases from the same time frame. *See* JA-6; R. No. 1, at 1,

JA-9–JA-10; R. No. 1, at 4–5. Further, for more recent and future filings, the

Application sought an order directing the USAO to move to unseal these records

once an investigation was closed, and an order directing the Clerk of the Court to

unseal any SCA warrant materials still under seal 180 days after their filing absent

a showing by the USAO that continued sealing is necessary to serve a compelling

interest, and is narrowly tailored to that interest. *See* JA-6–JA-7; R. No. 1, at 12,

JA-9–JA-10; R. No. 1, at 4–5. The Application was accompanied by a

Memorandum of Points and Authorities explaining why the relief sought was

proper. *See* R. No. 2.

On December 28, 2020, the district court identified the USAO as the

appropriate respondent in the case and set a briefing schedule on the Application.

*See* JA-3; R. No. 13, at 1–2. At a status conference on February 24, 2021, the

district court directed the Reporters Committee, the USAO, and the Clerk's Office

to meet and confer about sealing practices in the District and attempt to narrow the

scope of the dispute. JA-25:8–15; R. No. 26, at 14:8–15 ("[S]o my suggestion is

we don't do any briefing, we don't do any litigating right now, that you folks do a

lot of talking with each other and the Clerk's Office. You just figure out the lay of

11

the land. You figure out what you disagree about and can't come to a negotiated solution for. And at that point, let's have another status conference and figure out how best to address whatever issues that are arising."). The district court dismissed the Application without prejudice, instructing the Reporters Committee to file an Amended Application that addressed only the issues that could not be resolved through negotiation. *See* JA-27:5–10; R. No. 26, at 16:5–10 ("So I will enter a short order. It will deny your application without prejudice pursuant to our discussion. It's just to get it off the board and so I don't have this aging motion there. And then you folks come back to me when I can help you again.").

Over the following eight months, the Reporters Committee, the USAO, and the Clerk's Office met to discuss the policies, procedures, and practices in the District related to the docketing, sealing, and unsealing of judicial records filed with magistrate judges, including warrants and orders under the SCA and PRA, and their related applications and supporting materials. *See* JA-28; R. No. 30. During those negotiations, among other things, the Reporters Committee learned (1) that there was no system for differentiating between SCA warrants and orders, Federal Rule of Criminal Procedure 41 warrants, tracking device warrants and court orders, and PRA orders; (2) that some of the language on CM/ECF regarding warrants and court orders implied records were sealed when they were not; (3) that applications, supporting materials, and orders sought under 18 U.S.C. § 2703(d)

and the PRA are effectively permanently sealed, as were their dockets[9]; and

(4) that applications for warrants and orders are only docketed if they are granted

(*i.e.*, applications that are denied or denied without prejudice are rarely, if ever,

docketed).

As a result of these negotiations, the Reporters Committee, the USAO, and

the Clerk's Office agreed to two changes to then-current practices. First, the

Clerk's Office would add "flags" to CM/ECF dockets involving search warrants

and other orders to delineate the relevant statutory authority under which it was

being sought.[10] JA-28–JA-29; R. No. 30, at 1–2. Second, the Clerk's Office agreed

to add clarifying language to its website to inform the public that when warrants

and other magistrate judge orders are unsealed, they are available for viewing in

person at the Clerk's Office. JA-29; R. No. 30, at 2; *see also Public Access to

Court Records (PACER)*, U.S. Dist. Ct. for Dist. of Minn. ("Note: warrants and

---

[9] Because of other changes made to the docketing of these materials as a result of the negotiations, the dockets for these types of orders—though not the underlying filings—are now generally available to the public. As a result, the public knows, for example, that an application for an order under 18 U.S.C. § 2703 was filed on a particular day, but generally does not know any other information about that request, including whether it was granted. *See, e.g.*, *In re Electr. Investigation*, No. 22-mj-95-HB (D. Minn. Jan. 31, 2022).

[10] *See, e.g.*, *In re Search Warrant*, No. 22-mj-94-HB (D. Minn. Jan. 31, 2022) (showing flag in the upper-right corner of the docket identifying case as involving an SCA warrant request); *In re Electr. Investigation*, No. 22-mj-95-HB (D. Minn. Jan. 31, 2022) (showing flag in the upper-right corner of the docket identifying case as involving a PRA request).

Appellate Case: 22-3326    Page: 24    Date Filed: 01/27/2023 Entry ID: 5239878

other surveillance orders are unsealed only by order of the court. If unsealed, they will be available for viewing at a public terminal in the Clerk's Office.").

However, the Reporters Committee and USAO could not reach agreement as to two important issues. *See* JA-29; R. No. 30, at 2. First, the Reporters Committee argued that the District should apply the same docketing and sealing practices that it uses for warrants to applications, supporting materials, and orders under 18 U.S.C. § 2703(d) and the PRA. JA-29; R. No. 30, at 2. Second, the Reporters Committee argued that the District should docket denied applications for warrants and court orders sought under five specific authorities,[11] and that it should unseal those pursuant to the same rules applicable to applications that are granted. JA-29; R. No. 30, at 2.

On October 22, 2021, the district court held a status conference at which it set a schedule for the filing of the Reporters Committee's Amended Application, as well as for briefing on the narrower set of issues that remained in dispute. *See* JA-58:21–JA-59:13; R. No. 33, at 28:21–29:13. The district court made clear that the Amended Application should address only the remaining, disputed relief sought by the Reporters Committee. *See* JA-58:16–24; R. No. 33, at 28:16–24; *see also* JA-29; R. No. 30, at 2 (indicating the Reporters Committee's intent to file an

---

[11] *See supra* note 3.

Amended Application "seeking docketing and unsealing of the materials described above, based on the First Amendment and common law rights of access to court records").

## B. Amended Application, Briefing, and Argument

On January 28, 2022, the Reporters Committee filed its Amended Application as directed. JA-62–JA-66; R. No. 35, at 1–5. As it did in the initial Application, the Reporters Committee explained that it, "like all members of the public and the press, has a strong interest in observing and understanding the consideration and disposition of matters by United States District Courts," and that its interest is particularly strong for SCA and PRA matters. JA-63–JA-64; R. No. 35, at 2–3.

The Amended Application sought the following relief: (1) an order directing the Clerk of the Court to unseal all applications, supporting materials, and orders sought under 18 U.S.C. § 2703(d) and the PRA 180 days after filing absent a showing by the USAO that continued sealing is necessary to serve a compelling interest and narrowly tailored to that interest; (2) an order requiring the Clerk's Office to docket all applications for a warrant or surveillance order under five authorities, regardless of whether the applications are granted, denied, or amended; and (3) any other relief the district court deemed proper. JA-65–JA-66; R. No. 35, at 4–5. The specific relief sought was addressed to both existing, currently sealed

15

records, as well as future filings in the District. *See* JA-62–JA-63, JA-65–JA-66; R. No. 35, at 1–2, 4–5.

At the April 21, 2022 hearing on the Amended Application, the district court focused the argument on sealing policies and practices in the District and elsewhere. *See, e.g.*, JA-72:12–JA-77:5; R. No. 52, at 4:12–9:5 (asking about the District's sealing practices as compared to those of other jurisdictions); JA-78:12–JA-79:12; R. No. 52, at 10:12–11:12 (asking about numbers of cases filed in the District). The district court waved off argument concerning the Reporters Committee's standing, *see* JA-93:5–JA-95:3; R. No. 52, at 25:5–27:3, explicitly asking that the USAO focus its argument on the merits. *See* JA-95:1–3; R. No. 52, at 27:1–3 ("So at the end of the day, I've got to decide this one way or the other. So, you know, it's worth our time to focus on the merits."). The district court compared the proceeding to a case under the federal Freedom of Information Act, 5 U.S.C. § 552, where a member of the public need only request a record to which they are arguably entitled to establish standing. JA-93:23–JA-94:2; R. No. 52, at 25:23–26:2. Indeed, the district court indicated that if he found the Amended Application had merit, the Reporters Committee would be an appropriate entity to engage in further negotiations with the USAO to shape practical recommendations as to how to implement the requested relief. *See* JA-120:21–25; R. No. 52, at 52:21–25 ("As I said, you know, it may be that I can issue an order saying, here

I'm agreeing on certain principles and I need more work on trying to figure out remedies and things. But you've worked really well together so far and with our staff, and if we need to, hopefully that will continue.").

### C. Order on Review and Request to Seek Reconsideration

On October 11, 2022, the district court issued its order dismissing the Amended Application on the ground that the Reporters Committee lacked standing to seek the relief it sought, including unsealing of the records at issue. *See* JA-122–JA-133; R. No. 54, at 1–12. Judgment was entered on October 12, 2022. JA-134; R. No. 55.

The district court's opinion provides two reasons for dismissing the Amended Application on jurisdictional grounds. *First*, the district court concluded that the Reporters Committee did not establish that it suffered an injury-in-fact because its interest in obtaining access to the sealed records at issue is an interest shared by all members of the public. JA-127–JA-131; R. No. 54, at 6–10. Specifically, the district court concluded that the Reporters Committee was required to set forth a "concrete plan" for reviewing and "using" the records that would be unsealed, *see* JA-128–JA-129, JA-130; R. No. 54, at 7–8, 9, to establish standing. *See also* JA-131; R. No. 54, at 10 (indicating the Reporters Committee needed to describe an "*imminent* intent" to inspect the records at issue). Because the district court determined that the Amended Application did not detail a

17

"concrete plan" or "imminent intent" to review the records if unsealed, it held that "the [Reporters] Committee thus stands in a different position from a litigant who wants to unseal materials because he or she actually intends to review them." JA-130; R. No. 54, at 9; *see also* JA-129; R. No. 54, at 8 (distinguishing cases upon which the Reporters Committee relied as "appear[ing] to involve individual petitioners who intended to review the materials they petitioned to unseal," including *Leopold*), 964 F.3d at 1121, in which the Reporters Committee was a petitioner). *Second*, the district court suggested, in the alternative, that the Reporters Committee failed to establish standing because it did not show that any of its "members" had standing to pursue the action. JA-131–JA-132; R. No. 54, at 10–11.

On October 31, 2022, the Reporters Committee filed a letter pursuant to the district court's Local Rule 7.1(j) seeking permission to file a motion for reconsideration. *See* JA-135–JA-136; R. No. 56, at 1–2. The Reporters Committee described concerns that the order dismissing the Amended Application reflected manifest errors of law and would undermine the ability of news organizations and members of the public to seek access to court records. *See* JA-135; R. No. 56, at 1. The Reporters Committee also cited judicially noticeable information about its long history of successfully seeking access to sealed warrants, orders, and related

18

judicial records in PRA and SCA matters, and its use of those materials to further its organizational mission. *See* JA-136; R. No. 56, at 2.

The district court denied that request on November 1, 2022. JA-138–JA-141; R. No. 57, at 1–4. In the November 1 order, the district court stated that it "did *not* hold that the [Reporters] Committee must show that it intends to do anything with the records that it asks to unseal" and did not "fault the [Reporters] Committee for seeking to vindicate rights that it shares with every member of the public." JA-139; R. No. 57, at 2. The district court, however, did not amend its October 11 order dismissing the Amended Application or rescind its holding that the Reporters Committee lacked standing.

On November 4, 2022, the Reporters Committee appealed. *See* JA-5; R. No. 58.

Appellate Case: 22-3326    Page: 30    Date Filed: 01/27/2023 Entry ID: 5239878

## SUMMARY OF ARGUMENT

Said to predate the Constitution itself, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 612 (1978) (Marshall, J., dissenting), the right of the press and public to observe judicial proceedings and inspect judicial records is deeply rooted in American history. It is "one of the essential qualities of a court of justice" and an "indispensable attribute" of our judicial system. *Richmond Newspapers*, 448 U.S. at 567. This appeal involves a closely related and equally well-established right: the right of members of the public to challenge sealing and closures that assertedly deny them access in violation of the First Amendment and common law. *See Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 609 n.25 (1982) (explaining that "representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion"); *Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000) (explaining that the right to challenge sealing or closure makes concrete the public's "right to be heard in a manner that gives full protection of the asserted right" of access).

Because members of the public, including the press, *must* have the ability to challenge denials of access to judicial proceedings and records, courts—including this Court—have repeatedly recognized that "any member of the public has standing . . . to move the court to unseal the court file." *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992); *see also In re Iowa Freedom of Info.*

*Council*, 724 F.2d 658, 661 (8th Cir. 1983) ("[W]here a member of the media or the public objects to" a denial of access, "the court must give him or her a reasonable opportunity to state the objection."); *Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 927 (5th Cir. 1996) (stating that "news agencies have standing to challenge" court closures).

Despite the clarity of this precedent, the district court, below, held that the Reporters Committee lacked standing to seek the relief sought in its Amended Application—specifically, access to sealed warrants and court orders issued pursuant to the SCA and PRA, and related judicial records, and docketing and unsealing of denied applications sought pursuant to five specified authorities, that have been and will be filed in the District. In refusing to reach the merits of the Reporters Committee's right-of-access claims, and in dismissing the Amended Application on a threshold jurisdictional ground, the district court erred as a matter of law. This Court should reverse for the following reasons.

*First*, the district court's decision directly contravenes decades of precedent—including binding precedent from the Supreme Court and this Court, as well as numerous decisions of other federal courts of appeals—making clear that members of the press and public have a right to be heard on the merits when they raise colorable access claims under the common law or First Amendment. *See Globe Newspaper Co.*, 457 U.S. at 609 n.25; *Iowa Freedom of Info. Council*, 724

21

F.2d at 661. Accordingly, to establish that it has suffered an injury-in-fact sufficient to give it standing to bring such a challenge, a member of the public need only show (1) denial of access (2) to a record that it is arguably entitled to inspect. *See Doe v. Pub. Citizen*, 749 F.3d 246, 263–64 (4th Cir. 2014); *Carlson v. United States*, 837 F.3d 753, 758 (7th Cir. 2016). Simply put, "the right of access is widely shared among the press and the general public alike, such that anyone who seeks and is denied access to judicial records sustains an injury." *Doe*, 749 F.3d at 263.

*Second*, when the correct legal standard is applied, there can be no reasonable dispute that the Reporters Committee has standing to seek access to the judicial records identified in its Amended Application. The Reporters Committee is being denied—and will continue to be denied, absent redress from the district court—access to the SCA and PRA filings at issue. This ongoing injury to its "informational interests, though shared by a large segment of the citizenry," is "sufficiently concrete to confer Article III standing." *Id.*

Contrary to the district court's holding, the Reporters Committee, as a matter of law, was *not* required to detail in its Amended Application its intent to use the information in the sealed judicial records, provide a "concrete" plan to review those records, or make *any* additional showing to establish its standing to seek access to them. *Nixon*, 435 U.S. at 597 (majority opinion) (explaining that courts "do not condition enforcement of" the right of access "on a proprietary interest in

22

the document or upon a need for it as evidence in a lawsuit"). The district court's attempt to impose new, heightened requirements for a member of the public to establish standing in this context should be soundly rejected by this Court. *See Flynt v. Lombardi*, 782 F.3d 963, 967 (8th Cir. 2015) (reversing denial of a motion to intervene and, in so doing, rejecting the district court's reasoning that a "generalized interest in a subject of litigation does not justify intervention" where a party is seeking to intervene solely for the limited purpose of unsealing judicial records).

The district court's erroneous decision below, if not corrected by this Court, would strike a serious—if not fatal—blow to the ability of members of the public and press to vindicate their presumptive right to access judicial records and proceedings under the First Amendment and common law. For the reasons herein, this Court should reverse.

## STANDARD OF REVIEW

"[T]he existence of standing is a determination of law reviewed *de novo.*" *Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1036 (8th Cir. 2000); *see also Dalton v. NPC Int'l, Inc.*, 932 F.3d 693, 695 (8th Cir. 2019) ("This court reviews standing de novo."). While "standing is a question of subject matter jurisdiction" that is resolved "as a matter of law[,]" *Wilkinson v. United States*, 440 F.3d 970, 977 (8th Cir. 2006), "factual determinations relating to standing must be upheld on appeal

unless they are clearly erroneous," *Nor-W. Cable Commc'ns P'ship v. City of St. Paul*, 924 F.2d 741, 746 (8th Cir. 1991).

## ARGUMENT

The district court's conclusion that the Reporters Committee lacks standing to seek the relief sought in its Amended Application is wrong as a matter of law. It is well settled that members of the press and public, including news organizations and entities like the Reporters Committee, have standing to assert their common law and First Amendment rights of access to judicial records. It is not disputed that the Reporters Committee is currently being, and will continue to be, denied access to judicial records—specifically, to warrants and orders under the SCA and PRA, and related filings, as well as denied applications under five specified authorities—in the District, as the Reporters Committee alleged in its Amended Application. The law is clear: denial of access constitutes an injury-in-fact for purposes of Article III standing.

## I. The Reporters Committee, like all members of the press and public, has a right to challenge a court's denial of access to judicial records.

The district court, in refusing to reach the merits of the right-of-access claims raised in the Reporters Committee's Amended Application, contravened decades of precedent—including binding decisions of the Supreme Court and this Court, as well as decisions from other courts—that make clear that members of the press and public *must* be heard when they challenge denials of their common law

24

and First Amendment rights to attend judicial proceedings and inspect judicial records. *See, e.g.*, *Iowa Freedom of Info. Council*, 724 F.2d at 661 ("[W]here a member of the media or the public objects to" closure, "the court must give him or her a reasonable opportunity to state the objection."). If not reversed, the district court's ruling will shut the courthouse door to at least some (if not all) challenges to the sealing of judicial records by members of the press and public.

The presumptive right of the public to access judicial proceedings and records has been recognized and reaffirmed by the Supreme Court and this Court in case after case. *See, e.g.*, *Press-Enterprise Co. v. Super. Ct.* (*Press-Enterprise II*), 478 U.S. 1 (1986) (constitutional right of access to preliminary hearings in criminal cases); *Press-Enterprise Co. v. Super. Ct.* (*Press-Enterprise I*), 464 U.S. 501 (1984) (constitutional right of access to voir dire in criminal trials); *Globe Newspaper Co.*, 457 U.S. at 607–11 (holding statute requiring closure of certain court proceedings was unconstitutional in light of public's presumptive right of access); *Richmond Newspapers*, 448 U.S. at 580–81 (constitutional right of access to criminal trials); *Nixon*, 435 U.S. at 597 (recognizing common law "right to inspect and copy public records and documents, including judicial records and documents"); *In re Search Warrant for Secretarial Area Outside Off. of Gunn* (*In re Gunn*), 855 F.2d 569, 575 (8th Cir. 1988) (holding that "the qualified first amendment right of public access extends to the documents filed in support of

search warrants" and that "case dockets maintained by the clerk of the district court are public records"); *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) ("There is a common-law right of access to judicial records.").

This Court has recognized that access to judicial records is particularly important for public understanding of—and trust in—the criminal justice system. *See, e.g.*, *In re Gunn*, 855 F.2d at 573 ("[P]ublic access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct."). Openness "enhances both the basic fairness of [a] trial and the appearance of fairness so essential to public confidence in the system." *Press-Enterprise II*, 478 U.S. at 8; *see also Globe Newspaper Co.*, 457 U.S. at 606 ("Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process").

More fundamentally, access enables "the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government." *Globe Newspaper Co.*, 457 U.S. at 606; *see also Wash. Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) (explaining that the First Amendment right of access "serves an important function of monitoring prosecutorial or judicial misconduct"); *In re Gunn*, 855 F.2d at 573 (same). Thus, public access especially vital in matters that concern actions taken by the executive

26

branch, such as requests by federal law enforcement for a court order under 18 U.S.C. § 2703 or the PRA. As the Seventh Circuit has explained, "in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Smith v. U.S. Dist. Ct.*, 956 F.2d 647, 650 (7th Cir. 1992) (quoting *FTC v. Std. Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987); *see also United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (stating the "courts must impede scrutiny of the exercise of [judicial] judgment only in the rarest of circumstances," especially "when a judicial decision accedes to the requests of a coordinate branch").

Because "[w]hat transpires in the court room is public property," *Craig v. Harney*, 331 U.S. 367, 374 (1947), any decision to exclude the public from the business of the courts must meet rigorous substantive and procedural standards, *Press-Enterprise II*, 478 U.S. at 8–10, and must be made "on a case-by-case basis[.]" *Globe Newspaper Co.*, 457 U.S. at 608. This "case-by-case" evaluation requires—as federal courts of appeals across the country, including this Court, have concluded—that members of the press and public challenging denials of their common law or constitutional right of access be heard on the merits. *See, e.g.*, *Flynt*, 782 F.3d at 967 (reversing denial of a motion to intervene for the limited purpose of unsealing judicial records); *Webster Groves Sch. Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1377 (8th Cir. 1990) (district court did not abuse its discretion

27

when it denied a motion to intervene because the publisher was given "a full and fair opportunity to be heard on its arguments as to why it should have such access"); *Iowa Freedom of Info. Council*, 724 F.2d at 661; *see also Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507 n.19 (1st Cir. 1989) (noting that members of the public, and specifically the press, "must be permitted to participate" in hearings regarding the sealing of criminal case records); *In re Appl. of The Herald Co.*, 734 F.2d 93, 102–03 (2d Cir. 1984) (describing minimum requirements necessary to ensure public can vindicate its right to be heard when court proceedings may be sealed); *United States v. Brooklier*, 685 F.2d 1162, 1167–68 (9th Cir. 1982) (explaining that those proposed to be excluded from a criminal proceeding "must be afforded a reasonable opportunity to state their objections"); *United States v. Criden*, 675 F.2d 550, 559 (3d Cir. 1982) (indicating that hearings on closure motions must be docketed sufficiently in advance to permit intervention by members of the public). As these cases make clear, it is the contemplated or actual sealing of judicial records or closure of court proceedings (*i.e.*, a denial of the presumptive right of access) that provides a member of the public with the right to an adjudication of their access claim.

The district court's conclusion that the Reporters Committee lacks standing to seek the relief sought in its Amended Application, including the unsealing of sealed judicial records, simply cannot be reconciled with this established

precedent, and is inconsistent with the very nature of the public's presumptive right of access. If not reversed, the reasoning of the district court's order could prevent members of the press and public, like the Reporters Committee, from being heard *at all* on future challenges to the sealing of judicial records.

## II. The Reporters Committee has standing to seek access to the records at issue in this case.

The district court erred in dismissing the Reporters Committee's Amended Application for lack of standing. Members of the public suffer an injury-in-fact when they are denied access to judicial records they are arguably entitled to inspect. The Reporters Committee undisputedly has been denied, and will continue to be denied, access to judicial records that it has an arguable right to inspect. As a matter of law, nothing more is needed.[12]

### A. The Reporters Committee, like any member of the public, suffers a cognizable injury-in-fact when it is denied access to a judicial record it is arguably entitled to inspect.

As the district court acknowledged, it is well settled that "a litigant who is denied access to materials to which he or she claims a legal right suffers an Article

---

[12] The district court below rested its decision on the purported lack of any injury-in-fact. JA-128–JA-132; R. No. 54, at 7–11. Accordingly, the Reporters Committee focuses its arguments on that element of the standing analysis. The remaining requirements for Article III standing, however, are also plainly satisfied: the Reporters Committee's inability to access the records at issue is traceable to the sealing policies and practices in the District, and its injury would be redressed if the relief sought by the Amended Application were granted. *See Davis*, 78 F.3d at 927; *Carlson*, 837 F.3d at 760.

Appellate Case: 22-3326    Page: 40    Date Filed: 01/27/2023 Entry ID: 5239878

III injury." JA-128; R. No. 54, at 7. That is precisely what occurred here. The Reporters Committee sought access to certain records—warrants, 2703(d) orders, PRA orders, and related judicial documents—that are currently under seal in the District, as well as to such records that will be filed in the District in the future. The Reporters Committee is arguably entitled to inspect these records. *See* JA-64; R. No. 35, at 3 (citing cases that indicate the Reporters Committee has a First Amendment and common law right of access to the records it seeks to unseal). Thus, the Reporters Committee has demonstrated an injury-in-fact.

The question of whether a party has standing to seek to unseal judicial records is a threshold one that "is distinct from the issue of whether the party's motion to unseal should be granted." *Flynt*, 782 F.3d at 967 n.3; *see also Carlson*, 837 F.3d at 759 ("That [the] petition is not guaranteed to be granted, because a court may find a valid justification for denying [petitioner] access, in no way destroys [petitioner's] standing to seek the documents. To hold otherwise would amount to denying standing to everyone who cannot prevail on the merits, an outcome that fundamentally misunderstands what standing is." (citations omitted)); *Ford v. City of Huntsville*, 242 F.3d 235, 240 (5th Cir. 2001) (indicating that the standing analysis is separate from the merits analysis in unsealing case); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994) ("[I]n determining whether the Newspapers have standing, we need not determine that the

Newspapers will ultimately obtain access to the sought-after Settlement Agreement. We need only find that the Order of Confidentiality being challenged presents an obstacle to the Newspapers' attempt to obtain access."). That the claim need only be arguable—or "colorable"—reflects the difference between the standing inquiry and the merits inquiry. *See In re Granick*, 388 F. Supp. 3d 1107, 1117 (N.D. Cal. 2019) ("Only a colorable claim is required, regardless of its strength, for if the courts were to require more than a colorable claim, 'we would decide the merits of the case before satisfying ourselves of standing.'" (quoting *Carlson*, 837 F.3d at 758)).

Courts considering whether a member of the public, such as a news or nonprofit organization,[13] has standing to seek access to sealed court records have consistently concluded that standing in this context requires only that the member of the public: (1) be denied access (2) to a record that it is arguably entitled to

---

[13] The district court's ruling suggests, alternatively, that the Reporters Committee failed to establish associational standing because it failed to show that one of its members has standing. JA-131–JA-132; R. No. 54, at 10–11. But organizations like the Reporters Committee have standing to seek access to judicial proceedings and judicial records in their own right. *See, e.g.*, *Doe*, 749 F.3d at 263–64; *see also, e.g.*, *Webster Groves Sch. Dist.*, 898 F.2d at 1377 (media organization seeking access to judicial records); *Davis*, 78 F.3d at 927 (stating that "news agencies have standing to challenge" court closures). In any event, the Reporters Committee is a "legal entity distinct from its members and managers" with "the same powers as an individual to do all things necessary or convenient to carry on its purposes." D.C. Code § 29-1105.

inspect. *See, e.g.*, *Carlson*, 837 F.3d at 758 (holding that a plaintiff "suffers an injury-in-fact when she is unable to obtain information that is statutorily subject to public disclosure" and that "[i]njury-in-fact can arise from a comparable common-law source"); *Doe*, 749 F.3d at 263–64 (holding that "informational harm" caused by an inability to access judicial records confers standing to non-profit organizations who work on issues related to the substance of sealed court filings); *Davis*, 78 F.3d at 927 (indicating news organizations had standing to seek to lift a nondisclosure order); *but see Grae v. Corr. Corp. of Am.*, No. 22-5312, 2023 WL 179767 (6th Cir. Jan. 13, 2023) (holding that a party did not have standing to seek to unseal records because the party had not established it suffered "adverse effects" from sealing), *petition for reh'g en banc filed* (Jan. 20, 2023).

Significantly, and contrary to the district court's ruling, the fact that a party's presumptive right to inspect the judicial records at issue is common to every member of the public and press does not change the analysis.[14] *See* JA-127–JA-128, JA-131; R. No. 54, at 6–7, 10. "That an injury may be widely shared . . . does not automatically render it unsuitable for Article III standing. Even a widely shared

---

[14] Though the district court's November 1, 2022 order denying the Reporters Committee's request to file a motion for reconsideration seemingly disclaimed this part of its decision, the district court did not revise or rescind its order dismissing the Amended Application on this ground. *See* JA-139; R. No. 57, at 2 ("Nor did the Court fault the Committee for seeking to vindicate rights that it shares with every member of the public.").

Appellate Case: 22-3326     Page: 43     Date Filed: 01/27/2023 Entry ID: 5239878

interest, where sufficiently concrete, may count as an injury in fact." *Doe*, 749 F.3d at 263–64 (quotation marks omitted) (citing *FEC v. Akins*, 524 U.S. 11, 24 (1998)). And "[t]he Supreme Court consistently has held that a plaintiff suffers an Article III injury when he is denied information that must be disclosed pursuant to a statute," for example, "notwithstanding the fact that other citizens or groups of citizens might make the same complaint after unsuccessfully demanding disclosure." *Doe*, 749 F.3d at 263; *see also Pub. Citizen v. DOJ*, 491 U.S. 440, 449–50 (1989) (rejecting argument that informational injury is shared means litigants lack standing); *Brown*, 960 F.2d at 1016 ("[B]ecause it is the rights of the public, an absent third party, that are at stake, any member of the public has standing to view documents in the court file that have not been sealed in strict accordance with [precedent], and to move the court to unseal the court file in the event the record has been improperly sealed.").

This approach to standing is broadly applicable to challenges to sealing and other denials of the presumptive right of access to judicial records without regard to whether they arise in the criminal, civil, or some other context. *See, e.g.*, *Carlson*, 837 F.3d at 757 (holding member of the public had standing to seek access to grand jury materials); *Doe*, 749 F.3d at 253 (holding intervenor consumer rights organizations had standing to seek to unseal judicial records in civil case); *United States v. Aldawsari*, 683 F.3d 660, 664 (5th Cir. 2012) (holding that

33

journalist had standing to challenge "gag order" in a criminal case); *United States v. Valenti*, 987 F.2d 708, 711 (11th Cir. 1993) ("We first note the *Times*'s standing to intervene for purposes of challenging its denial of access to the underlying litigation, even though it is otherwise not a party.").

### B. The Reporters Committee has a colorable right to inspect the SCA and PRA records to which it seeks access.

The Reporters Committee has an arguable right to inspect the records described in the Amended Application: sealed court orders, applications, and supporting materials filed under 18 U.S.C. § 2703(d) and the PRA, as well as denied applications for five categories of warrants and court orders. *See* JA-62–JA-66; R. No. 35, at 1–5. This Court expressly has held that warrant materials are subject to a presumption of access under both the First Amendment and the common law. *See In re Gunn*, 855 F.2d at 573–74. Other courts have held that the judicial records at issue here—which are similar in important respects to warrant materials—are subject to—at least—the common law right of access. *See Leopold*, 964 F.3d at 1128 (holding the common law presumption of access applicable to SCA and PRA materials); *In re Appl. of United States for Ord. Pursuant to 18 U.S.C. § 2703(d)* (*Appelbaum*), 707 F.3d 283, 290–91 (4th Cir. 2013) (holding that 2703(d) orders are judicial records to which the common law right of access attaches). Given this precedent, the Reporters Committee's claim of access easily passes the "colorable" bar. Moreover, there is no question that the records

34

described in the Amended Application are unavailable for the Reporters Committee's inspection. *See* JA-36:22–JA-37:12; R. No. 33, at 6:22–7:12 (indicating that 18 U.S.C. § 2703(d) and PRA applications are only docketed if they are granted); JA-119:23–JA-120:3; R. No. 52, at 51:23–52:3 (USAO agreeing that materials related to 2703(d) and PRA orders are perpetually sealed in practice).

Because the Reporters Committee (1) has a colorable right of access to the judicial records described in the Amended Application and (2) indisputably cannot access those records, the Reporters Committee has suffered a cognizable injury-in-fact for purposes of Article III standing. *See, e.g.*, *Doe*, 749 F.3d at 262–63 (explaining that "failure to obtain information—information, which in [petitioners'] view, they had a right to access under the common law or the Constitution" establishes injury sufficient to confer standing).

In concluding that the Reporters Committee failed to establish standing, the district court made at least three errors. *First*, the district court erroneously faulted the Reporters Committee for not articulating a "concrete plan" or "*imminent* intent[] to access or inspect any of the materials" at issue in the case were they to

35

be unsealed.[15] JA-130–JA-131; R. No. 54, at 9–10. As explained above, the law imposes no such requirement. To establish standing, a litigant need only demonstrate that it is being denied access to a record that it is arguably entitled to inspect. *See Carlson*, 837 F.3d at 758. Indeed, the Reporters Committee is not aware of any decision requiring a member of the press or public seeking to unseal judicial records to articulate precisely when or how it will review those records once they are unsealed, or how they will use the records once they have access to them. The district court erred as a matter of law in imposing this undue—and impractical[16]—additional requirement on a member of the public seeking to vindicate its presumptive right of access to sealed judicial records.

*Second*, the district court erred in concluding that dismissal was required because the Reporters Committee had not "offered evidence of any kind" in support of its standing. JA-126; R. No. 54, at 5. That conclusion is flawed for the simple reason that the parties *agree* as to the only facts relevant to the standing

---

[15] The district court seemingly disclaimed this holding in its order denying the Reporters Committee's request to file a motion for reconsideration, though it left its ruling undisturbed. *See* JA-139; R. No. 57, at 2 ("To be clear: The Court did *not* hold that the Committee must show that it intends to do anything with the records that it asks to unseal.").

[16] It is impractical because members of the public and press do not have access to the materials they are moving to unseal before they are unsealed. As a result, members of the public cannot know, in advance, whether those materials will be useful in a particular manner or are newsworthy.

36

inquiry: the USAO did not dispute that the Reporters Committee seeks access to, and cannot access, the judicial records identified in the Amended Application. *See* Gov't's Resp. to Am. Appl. to Unseal 12–16, *In re Appl. of Reporters Comm. for Freedom of the Press to Unseal Certain Search Warrant Materials*, No. 20-mc-82-PJS-TNL (D. Minn. Mar. 14, 2022), ECF No. 42 (addressing the USAO's arguments that Reporters Committee lacked standing, which did not include that the Reporters Committee had no intent to review the records at issue). For the reasons set forth above, as a matter of law, there are no other facts relevant to the standing inquiry.

*Third*, the district court inexplicably concluded that the Reporters Committee lacked standing because it purportedly was not "in fact seeking to access documents or other information." JA-129; R. No. 54, at 8; *see also* JA-139; R. No. 57, at 2 (stating that the Reporters Committee "was not actually seeking access to any records"). That is flatly wrong—as is clear from the face of the Amended Application. *See* JA-62–JA-66; R. No. 35, at 1–5 (describing records at issue). Indeed, the relief sought by the Reporters Committee is directly aimed at remedying the Reporters Committee's inability to access the SCA and PRA records and the denied applications for warrants and court orders described in the Amended Application: the Reporters Committee seeks both (1) the unsealing of specific, existing sealed records and matters for which the case numbers are

37

unknown, as well as (2) changes to docketing and sealing procedures in the District necessary to ensure that future filings of the same kind are not perpetually sealed (or never docketed) in violation of the Reporters Committee's First Amendment and common law rights of access.[17]

The district court, earlier in this litigation, acknowledged that the Reporters Committee has a particular interest in the judicial records described in the Amended Application, going so far as to discuss specific information of public interest that could be derived from unsealing them. *See, e.g.*, JA-24:12–JA-25:5; R. No. 26, at 13:12–14:5. Indeed, as discussed above, such information goes directly to issues—including the protection of reporter-source communications—central to the Reporters Committee's organizational mandate. *See supra*, at 3, 7. The Reporters Committee has a colorable right to inspect those judicial records. The

---

[17] This combination of relief—the unsealing of currently sealed judicial records as well as forward-looking changes to policies and practices in the District—is the only way to vindicate meaningfully the public's rights of access to the judicial records at issue. It would be wholly impractical for the Reporters Committee to continuously intervene, individually, in every existing and future SCA or PRA matter in the District—not least because the District's current docketing practices make it difficult, if not impossible, to know when such a matter has been initiated. Such forward-looking relief has been granted by other courts in similar matters. *See, e.g.*, *Leopold*, 964 F.3d at 1125; *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 85 (2d Cir. 2004) (case challenging "longstanding Connecticut state court practice of sealing certain docket sheets, as well as entire case files"). And, the fact that the Amended Application seeks such forward-looking relief, in addition to the unsealing of currently sealed judicial records, does not affect the standing inquiry.

38

district court's conclusion that the Reporters Committee's inability to access them is not a cognizable injury-in-fact sufficient to confer Article III standing is error.

## CONCLUSION

The Amended Application makes clear that (1) the Reporters Committee seeks access to specific judicial records—namely, warrants, court orders and related filings under the PRA and SCA, and denied applications under five specific statutory authorities; (2) the Reporters Committee has an arguable right to inspect those records; and (3) the Reporters Committee cannot, in fact, access them. The injury-in-fact requirement of Article III is thus met. Because the Reporters Committee has standing to challenge the sealing of the judicial records described in the Amended Application, it respectfully requests that this Court reverse the district court's holding to the contrary and remand for further proceedings.

Dated: January 26, 2023

  s/ *Megan Graham*

Megan Graham
Samuelson Law, Technology &
  Public Policy Clinic
353 Law Building
UC Berkeley School of Law
Berkeley, CA 94720-7200
Tel: (510) 664-4381
mgraham@clinical.law.berkeley.edu

Appellate Case: 22-3326   Page: 50   Date Filed: 01/27/2023 Entry ID: 5239878

Katie Townsend
Bruce D. Brown
Charlie Hogle
Jennifer Nelson
Reporters Committee for Freedom
    of the Press
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Tel: (202) 795-9300
ktownsend@rcfp.org

Mary A. ("Leita") Walker
Ballard Spahr LLP
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2119
Tel: (612) 371-3211
walkerl@ballardspahr.com

*Counsel for Petitioner-Appellant*

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 9,539 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This count is from the word-count function of Microsoft Word.

2.     This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac Version 16.69 (part of Microsoft Word for Office 365) in 14-point Times New Roman font.

3.     Pursuant to Eighth Circuit Rule 28A(h)(2), this brief has been scanned for viruses and the motion is virus-free.

Dated: January 26, 2023

      s/ *Megan Graham*
Megan Graham
Samuelson Law, Technology &
   Public Policy Clinic
353 Law Building
UC Berkeley School of Law
Berkeley, CA 94720-7200
Tel: (510) 664-4381
mgraham@clinical.law.berkeley.edu

*Counsel for Petitioner-Appellant*

41

**CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: January 26, 2023

 s/ *Megan Graham*
Megan Graham
Samuelson Law, Technology &
  Public Policy Clinic
353 Law Building
UC Berkeley School of Law
Berkeley, CA 94720-7200
Tel: (510) 664-4381
mgraham@clinical.law.berkeley.edu

*Counsel for Petitioner-Appellant*

Appellate Case: 22-3326     Page: 53     Date Filed: 01/27/2023 Entry ID: 5239878