No. 22-3326

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS,

*Petitioner-Appellant*,

v.

UNITED STATES,

*Respondent-Appellee*.

*In the Matter of the Application of the
Reporters Committee for Freedom of the Press to
Unseal Certain Search Warrant Materials*

On Appeal from the United States District Court for the District of Minnesota
No. 20-mc-82-PJS-TNL (Hon. Patrick J. Schiltz)

**Addendum**

SUBMITTED BY:

Megan Graham
Samuelson Law, Technology &
  Public Policy Clinic
353 Law Building
UC Berkeley School of Law
Berkeley, CA 94720-7200
Tel: (510) 664-4381
mgraham@clinical.law.berkeley.edu

*Counsel for Petitioner-Appellant*

## TABLE OF CONTENTS

Table of Contents……………………………………………….. AD-i

Order. It is hereby ordered that petitioner's amended application to unseal certain surveillance orders and related materials 35 is denied without prejudice for lack of jurisdiction. Let judgment be entered accordingly. (Written Opinion) Signed by Chief Judge Patrick J. Schiltz on 10/11/2022 [ECF No. 54]……………………………………. AD-1

Order in Response to 56 Letter to Request Permission to File Motion to Reconsider. Signed by Chief Judge Patrick J. Schiltz on 11/01/2022 [ECF No. 57]…………………………………………….. AD-13

Circuit Rule 28A(h) Certification……………………………………….. AD-17

Certificate of Service……………………………………………… AD-18

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE AMENDED APPLICATION OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS TO UNSEAL CERTAIN SURVEILLANCE ORDERS AND RELATED MATERIALS | Case No. 20-MC-0082 (PJS/TNL)<br><br>ORDER |

Megan Graham and Catherine Crump, SAMUELSON LAW, TECHNOLOGY, & PUBLIC POLICY CLINIC, UC BERKELEY SCHOOL OF LAW; Mary Andreleita Walker, BALLARD SPAHR LLP, for petitioner The Reporters Committee for Freedom of the Press.

Kimberly A. Svendsen, David W. Fuller, and Timothy C. Rank, UNITED STATES ATTORNEY'S OFFICE, for respondent United States of America.

The Reporters Committee for Freedom of the Press ("the Committee") originally brought this action to challenge the practices of this District with regard to sealing and docketing warrant applications, supporting materials, and related court orders under the Stored Communications Act. This matter is before the Court on the Committee's amended application challenging this District's practices concerning sealing of materials under the Pen Register Act and 18 U.S.C. § 2703(d) of the Stored Communications Act, as well as this District's practice of docketing warrant and other surveillance applications only when the applications are granted.

For the reasons explained below, the Court finds that the Committee lacks standing to seek the relief that it requests in its amended application. Accordingly, the

Court denies the application and dismisses this case without prejudice for lack of jurisdiction.

## I.  BACKGROUND

The Committee is an unincorporated nonprofit association whose attorneys provide pro bono legal representation, amicus curiae support, and other legal resources to protect the First Amendment rights and newsgathering interests of journalists.  Am. Appl. ¶ 4.  In December 2020, the Committee initiated this case by filing an application seeking changes to this District's sealing practices concerning warrant applications under the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 et seq., including the unsealing of all SCA warrant applications, supporting materials, and related court orders pertaining to now-inactive investigations, retroactive to January 1, 2018.  ECF Nos. 1–3.

Although the Committee styled its pleading as a direct application to the Court, the Court ordered the government to respond, ECF Nos. 13, 18, as the requested relief would significantly affect the practices of the United States Attorney's Office ("USAO") for this District.  Before the government's response was due, however, the parties requested a status conference with the Court to clarify the USAO's role in this litigation and discuss various procedural and logistical matters.  ECF No. 20.

At the status conference, the parties agreed to engage in informal discussions with representatives of the Clerk's Office to determine to what extent the Court's

practices already conformed to the Committee's requested relief and to identify any technological or logistical barriers to implementing docketing or other changes.  *See* ECF No. 26 (transcript of February 24, 2021 status conference).  Over the ensuing months, the parties and personnel from the Clerk's Office worked diligently to increase public access to various materials.  Among other things, the parties agreed on a system to attach various flags to cases so that the public can track and distinguish between different types of surveillance applications that are filed in this District.  The Court expresses its appreciation to all of those who took part in these discussions.

Following the discussions, the Committee filed an amended application that essentially abandoned its challenges to this District's practices concerning SCA warrant materials, largely because the District's practices already substantially conformed to the Committee's requested relief.  In place of its original claims, the Committee raises challenges to three other sealing and docketing practices in this District: (1) the practice of indefinitely sealing applications, supporting materials, and orders obtained pursuant to the Pen Register Act ("PRA"), 18 U.S.C. § 3121 et seq.; (2) the practice of indefinitely sealing applications, supporting materials, and orders obtained pursuant to 18 U.S.C. § 2703(d); and (3) the practice not to docket unsuccessful applications for search warrants and other types of surveillance authorization.  The Committee seeks an order (1) requiring that all PRA and § 2703(d) materials be unsealed 180 days after filing

absent a showing that continued sealing is necessary to serve a compelling interest and is narrowly tailored to serve that interest; and (2) requiring that all applications for warrants and orders authorizing surveillance under Fed. R. Crim. P. 41, the SCA (including § 2703(d)), the PRA, and 18 U.S.C. § 3117, be docketed, regardless of whether the applications are granted, denied, or amended.

## II.  ANALYSIS

The government argues that the Committee lacks standing.  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Standing consists of three elements: "[(1)] an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id.*  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist."  *Id.* at 340.  A "particularized" injury is one that affects the plaintiff "in a personal and individual way."  *Lujan*, 504 U.S. at 560 n.1.

The plaintiff bears the burden of establishing standing and must clearly allege facts demonstrating each element.  *Spokeo*, 578 U.S. at 338; *Susan B. Anthony List v.*

*Driehaus*, 573 U.S. 149, 158 (2014).  Further, "[s]ince they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan*, 504 U.S. at 561.

At this "stage[] of the litigation," the Committee is asking the Court to enter final judgment in its favor (as opposed to, say, denying a motion to dismiss a complaint).  It would appear, then, that before the Court could enter judgment on the Committee's behalf, the Committee would have to offer evidence to support each element of standing.  *Cf. Iowa League of Cities v. EPA*, 711 F.3d 844, 869 (8th Cir. 2013) ("parties seeking direct appellate review of an agency action must prove each element of standing as if they were moving for summary judgment in a district court"); *see also Lujan*, 504 U.S. at 561 (at the summary-judgment stage, a plaintiff cannot rest on "mere allegations," but must offer evidence of specific facts showing standing (citation and quotation marks omitted)); *Owner-Operator Indep. Drivers Ass'n v. U.S. Dep't of Transp.*, 878 F.3d 1099, 1101 (8th Cir. 2018) (at the summary-judgment stage, "there must be a preponderance of the evidence that the elements of standing have been met" (citation and quotation marks omitted)).  The Committee has not met this requirement, as it has not offered evidence of any kind in support of either of its applications.

Even if "mere allegations" would suffice at this stage, the Committee's allegations would be insufficient. As noted, the Committee is a nonprofit association that provides pro bono legal representation and other legal resources to protect the First Amendment rights and newsgathering interests of journalists. Am. Appl. ¶ 4. In both its original and amended applications, the Committee characterizes its interest in this litigation as follows:

> The Reporters Committee, like all members of the public and the press, has a strong interest in observing and understanding the consideration and disposition of matters by United States District Courts. That interest is heightened in cases in which the federal government is a party.
>
> The press and the public have a particular interest in obtaining access to court documents concerning federal government requests for judicial authorization to collect electronic communications records under the PRA and the SCA. Where the government obtains court orders allowing it to obtain such information, judicial oversight and, in turn, press and public oversight of the judicial process, is necessary to guard against government overreach, promote the appearance of fairness in the courts, and educate and engage the public in judicial processes.

Am. Appl. ¶¶ 5–6; *see also* Appl. ¶¶ 4–5 (containing similar language except referring only to search warrants under the SCA).

The only interest that the Committee asserts here is an interest in observing and understanding the work of federal trial courts—an interest the Committee itself describes as being shared with "all members of the public and the press." Such an

interest is exactly the kind of generalized, abstract interest in the proper application of law that the Supreme Court has repeatedly held does *not* suffice to establish injury-in-fact. *See Carney v. Adams*, 141 S. Ct. 493, 498 (2020) ("a grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact'"); *Lance v. Coffman*, 549 U.S. 437, 442 (2007) ("The only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed. This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past."); *Lujan*, 504 U.S. at 573–74 ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.").

It is true, as the Committee argues, that a litigant who is denied access to materials to which he or she claims a legal right suffers an Article III injury. *See, e.g., Carlson v. United States*, 837 F.3d 753, 758 (7th Cir. 2016) ("A plaintiff suffers an injury-in-fact when she is unable to obtain information that is statutorily subject to public disclosure."). In most of the cases that the Committee cites, however, there was no

dispute that the litigants were in fact seeking to access documents or other information that the litigants intended to review. *See id.* at 756–57 (journalist writing a book about decades-old Espionage Act criminal investigation sought access to grand-jury testimony); *Doe v. Pub. Citizen*, 749 F.3d 246, 252–53 (4th Cir. 2014) (consumer advocacy groups sought access to sealed records of case in which company sued to enjoin publication of information that its products caused a fatality); *United States v. Aldawsari*, 683 F.3d 660, 662, 664–65 (5th Cir. 2012) (journalist had standing to challenge gag order in criminal case because it affected his right to gather news); *In re Petition of Trib. Co.*, 784 F.2d 1518, 1519, 1521 (11th Cir. 1986) (newspaper publisher had standing to intervene to obtain transcripts of bench conferences in a criminal trial).

Even the cases that most closely resemble this case—that is, the cases in which petitioners sought to unseal many years' worth of surveillance-application materials—appear to involve individual petitioners who intended to review the materials they petitioned to unseal. *Matter of Leopold*, 327 F. Supp. 3d 1, 6 (D.D.C. 2018), *rev'd and remanded sub nom. In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121 (D.C. Cir. 2020) (journalist petitioned to unseal twenty years of sealed government surveillance applications);[1] *In re Granick*, 388 F. Supp. 3d 1107,

---

[1] The opinions in *Leopold* do not make clear the nature of the petitioning journalist's interests. It is a fair inference, however, that the journalist intended to access the materials, as he filed the original petition on his own behalf and was not

(continued...)

1115–17 (N.D. Cal. 2019) (researchers sought access to thirteen years of sealed records, alleging that the prolonged sealing of the records hampered their research into judicially authorized government surveillance). Unlike in those cases, here there is no petitioner who is trying to gain access on his or her own behalf to the materials that the Committee seeks to unseal. Put differently, the Committee wants to unseal these materials in case some unspecified person may some day want to review them; the Committee thus stands in a different position from a litigant who wants to unseal materials because he or she actually intends to review them. *Cf. Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.").

A litigant who had a concrete plan to review certain sealed materials would likely have standing to bring at least an "as applied" challenge to any District practice that prevented that litigant from gaining access to those materials. Again, though, the Committee's problem is that it does not allege that it has *any* intent, much less an

---

[1](...continued)
joined by the Committee until three years later, when the Committee moved to intervene. *Leopold*, 327 F. Supp. 3d at 6. Even if the journalist did not intend to personally access the materials he sought to unseal, however, the opinions cannot be read to establish that an abstract interest such as the interest asserted by the Committee in this case is sufficient to establish standing, as neither the district court nor the appellate court even mentioned the issue of jurisdiction.

*imminent* intent, to access or inspect any of the materials that it seeks to unseal.[2] Nor does the Committee allege that it previously sought and was denied access to any of those materials. Instead, the Committee seeks a wholesale change to this District's sealing and docketing practices based on nothing more than a general interest in governmental transparency—an interest that the Committee explicitly says it has in common with "all members of the public and the press." Am. Appl. ¶ 5. Nothing more clearly demonstrates the abstract nature of the Committee's interest than the fact that it did not realize that this District already followed most of the practices that it requested in its original application. The Committee's interest is patently insufficient to establish standing.

"Even in the absence of injury to itself, an association may have standing solely as the representative of its members." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). The Committee does not argue that it has this type of standing, however. Even if it had made the argument, the Committee could not succeed, as the Committee has not identified any member who would have standing to bring this lawsuit in his or her own right—a necessary element of associational standing. *Hunt v. Wash State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) ("an association has standing to bring suit on behalf of

---

[2] Because the Committee does not allege an imminent intent to access any documents, the Court need not and does not address whether a litigant's desire to access a particular document would give that litigant standing to bring a District-wide challenge.

its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit"); *see also Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1022–24 (8th Cir. 2012) (analyzing whether the plaintiff association had established that its members had concrete and particularized injuries that were actual or imminent).

In short, although the Court commends the Committee for seeking to protect the public interest in access to judicial records, that interest is simply insufficient to establish that the Committee has standing.  *Carney*, 141 S. Ct. at 499 ("a plaintiff cannot establish standing by asserting an abstract general interest common to all members of the public, no matter how sincere or deeply committed a plaintiff is to vindicating that general interest on behalf of the public" (cleaned up)).  The Court therefore must deny the Committee's petition without prejudice for lack of jurisdiction.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT petitioner's amended application to unseal certain surveillance orders and related materials [ECF No. 35] is DENIED WITHOUT PREJUDICE for lack of jurisdiction.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  October 11, 2022 s/Patrick J. Schiltz
Patrick J. Schiltz, Chief Judge
United States District Court

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE AMENDED APPLICATION OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS TO UNSEAL CERTAIN SURVEILLANCE ORDERS AND RELATED MATERIALS | Case No. 20-MC-0082 (PJS/TNL)  ORDER |

Megan Graham, SAMUELSON LAW, TECHNOLOGY, & PUBLIC POLICY CLINIC, UC BERKELEY SCHOOL OF LAW; Mary Andreleita Walker, BALLARD SPAHR LLP, for petitioner The Reporters Committee for Freedom of the Press.

The Reporters Committee for Freedom of the Press ("the Committee") originally brought this action to challenge the practices of this District with regard to sealing and docketing warrant applications, supporting materials, and related court orders under the Stored Communications Act. The Committee later amended its application to challenge this District's practices concerning sealing of materials under the Pen Register Act and 18 U.S.C. § 2703(d) of the Stored Communications Act, as well as this District's practice of docketing warrant and other surveillance applications only when the applications are granted. The Court recently denied the amended application, concluding that the Committee lacked standing. ECF No. 54.

This matter is before the Court on the Committee's letter request, pursuant to Local Rule 7.1(j), for permission to file a motion to reconsider. Under Rule 7.1(j), "[a] party must show compelling circumstances to obtain such permission." The Committee

**AD-13**

has failed to show such circumstances. Instead, it presents the same arguments that the Court has already rejected, and the Court has already explained why the cases on which the Committee relied are distinguishable.

To be clear: The Court did *not* hold that the Committee must show that it intends to do anything with the records that it asks to unseal. Nor did the Court fault the Committee for seeking to vindicate rights that it shares with every member of the public. Instead, the Court held that, so far as the allegations in the Committee's original and amended applications show, it was not actually seeking access to any records. Instead, it was simply seeking, on behalf of the general public, to change this District's sealing and docketing practices to conform to what the law (allegedly) requires. In other words, unlike (for example) the appellants in *Public Citizen v. DOJ*, 491 U.S. 440 (1989), who "sought and were denied specific agency records," *id.* at 449, the Committee did not allege that it sought, or was seeking, any records.

The Committee also faults the Court for treating its amended application as a motion for summary judgment without giving it notice and an opportunity to present evidence. This argument is puzzling, as it was the Committee itself who was seeking judgment in its favor. Setting that aside, this argument is misplaced, as the Court did not treat the Committee's amended application as a motion for summary judgment. Instead, the Court explained that, if the Committee's application should be considered

as such, the Committee had failed to meet the standard for judgment in its favor. The Court then went on to explain that, even if the standing issue should be analyzed based solely on the allegations in the amended application, the Committee had failed to establish standing.[1] The Committee has therefore failed to show compelling circumstances, and its request to file a motion for reconsideration is denied.

The Committee also cites Fed. R. Civ. P. 59(e), which permits a party to file a motion to alter or amend the judgment. To the extent the Committee seeks relief under that rule, its motion is also denied. "Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *Matthew v. Unum Life Ins. Co. of Am.*, 639 F.3d 857, 863 (8th Cir. 2011) (citations and quotation marks omitted). For the foregoing reasons, the Court did not make a manifest error of law or fact and the Committee is therefore not entitled to relief under Rule 59(e).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT petitioner's letter request to file a motion to reconsider [ECF No. 56] is DENIED.

---

[1] The Committee cannot complain that it did not get notice of the standing issue, as the government raised that issue in its brief.

Dated: November 1, 2022

        s/Patrick J. Schiltz
        Patrick J. Schiltz, Chief Judge
        United States District Court

# CIRCUIT RULE 28A(h) CERTIFICATION

Pursuant to Eighth Circuit Rule 28A(h)(2), this brief has been scanned for viruses and the motion is virus-free.

Dated: January 26, 2023

   s/ *Megan Graham*
Megan Graham
Samuelson Law, Technology &
  Public Policy Clinic
353 Law Building
UC Berkeley School of Law
Berkeley, CA 94720-7200
Tel: (510) 664-4381
mgraham@clinical.law.berkeley.edu

*Counsel for Petitioner-Appellant*

# CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: January 26, 2023

   s/ *Megan Graham*
Megan Graham
Samuelson Law, Technology &
  Public Policy Clinic
353 Law Building
UC Berkeley School of Law
Berkeley, CA 94720-7200
Tel: (510) 664-4381
mgraham@clinical.law.berkeley.edu

*Counsel for Petitioner-Appellant*