No. 22-3326

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS,

Petitioner-Appellant,

v.

UNITED STATES,

Respondent-Appellee.

Appeal from the United States District Court for the District of Minnesota
No. 0:20-mc-00082-PJS

## BRIEF OF AMICI CURIAE MEDIA ORGANIZATIONS
## IN SUPPORT OF PETITIONER-APPELLANT REPORTERS
## COMMITTEE FOR FREEDOM OF THE PRESS AND REVERSAL OF
## THE DISTRICT COURT'S RULING

Laura Handman
Marietta Catsambas
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
Telephone: (202) 973-4200
Email: laurahandman@dwt.com
        mariettacatsambas@dwt.com

Attorneys for Amici Curiae Media Organizations

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, amici curiae state that:

Arkansas Times LP does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

Courthouse News Service is a privately held corporation with no parent company, and no publicly held corporation owns more than 10% of its stock.

Gannett Co., Inc. is a publicly traded company and has no affiliates, parents, or subsidiaries that are publicly owned. BlackRock, Inc. owns ten percent or more of the stock of Gannett Co., Inc.

The Iowa Freedom of Information Council is a 501(c)(3) nonprofit organization. It issues no stock and has no corporate parent.

Minnesota Public Radio is a 501(c)(3) corporation that is part of the American Public Media Group, which is also a 501(c)(3), both organized under the laws of Minnesota.

Public Record Media is a nonprofit corporation organized under the laws of Minnesota. Public Record Media has no parent corporation, and no person or entity owns any portion of its stock.

i

The Silha Center for the Study of Media Ethics and Law is located within the Hubbard School of Journalism and Mass Communication at the University of Minnesota, a public land-grant research university.

Appellate Case: 22-3326     Page: 3     Date Filed: 02/07/2023 Entry ID: 5243321

# TABLE OF CONTENTS

*Page*

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...................................................................................iv

INTEREST OF AMICI CURIAE ...........................................................................1

INTRODUCTION ....................................................................................................2

DISCUSSION ...........................................................................................................3

    I.     The Press and the Public Have a Powerful Interest in Obtaining Access to Court Records .........................................................................3

    II.    Advocacy Organizations Like the Reporters Committee Are Uniquely Positioned to Seek Access on a District-Wide Basis to Electronic Surveillance Records for the Benefit of the News Media ..................................................................................................6

    III.   Jurisdictional Hurdles to Accessing Records Create Significant Consequences for Newsgathering .................................................10

CONCLUSION .......................................................................................................13

CERTIFICATE OF COMPLIANCE ....................................................................14

CERTIFICATE OF SERVICE .............................................................................15

APPENDIX .............................................................................................................16

Appellate Case: 22-3326    Page: 4    Date Filed: 02/07/2023 Entry ID: 5243321

# TABLE OF AUTHORITIES

*Page(s)*

## Cases

*Amazon.com LLC v. Lay*,
    758 F. Supp. 2d 1154 (W.D. Wash. 2010) .........................................................11

*Branzburg v. Hayes*,
    408 U.S. 665 (1972)...................................................................................3, 10

*Cox Broad. Corp. v. Cohn*,
    420 U.S. 469 (1975)..........................................................................................6

*Doe v. Pub. Citizen*,
    749 F.3d 246 (4th Cir. 2014) ............................................................................11

*Globe Newspaper Co. v. Super. Ct.*,
    457 U.S. 596 (1982)..........................................................................................3

*IDT Corp. v. eBay*,
    709 F.3d 1220 (8th Cir. 2013) ...........................................................................3

*In re Application of Jason Leopold to Unseal Certain Electronic
    Surveillance Applications and Orders*,
    No. 1:13-mc-00712 (D.D.C.)................................................................................6

*In re Application of Reporters Committee for Freedom of the Press for
    Access to Certain Sealed Court Records*,
    No. 0:18-mc-00085 (D. Minn.).............................................................................9

*In re Application of Reporters Committee for Freedom of the Press for
    Access to Certain Sealed Court Records*,
    No. 1:16-mc-02183 (D.D.C.)................................................................................8

*In re Application of Reporters Committee for Freedom of the Press for
    Access to Certain Sealed Court Records*,
    No. 1:17-cv-00169 (D. Md.).................................................................................8

*In re Application of Reporters Committee for Freedom of the Press for
    Access to Certain Sealed Court Records*,
    No. 1:17-mc-00002 (E.D. Va.) .............................................................................9

Appellate Case: 22-3326    Page: 5    Date Filed: 02/07/2023 Entry ID: 5243321

*In re Application of Reporters Committee for Freedom of the Press for Access to Certain Sealed Court Records*,
No. 1:17-mc-00008 (S.D. Ind.) ...................................................9

*In re Application of Reporters Committee for Freedom of the Press for Access to Certain Sealed Court Records*,
No. 1:17-mc-00142 (D.D.C.) ....................................................9

*In re Application of Reporters Committee for Freedom of the Press to Unseal Criminal Prosecution of Julian Assange*,
No. 1:18-mc-00037 (E.D. Va.) ..................................................4

*In re Grand Jury Subpoena 7049*,
GJ 18-41 (D.D.C.) ....................................................................4

*In re Grand Jury Subpoena*,
No. 18-3071 (D.C. Cir.) ...........................................................4

*In re Grand Jury Subpoena*,
No. 18A669 (U.S.) .....................................................................4

*In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*,
964 F.3d 1121 (D.C. Cir. 2020) ...............................................7

*In re: Search Warrant dated November 5, 2021*,
No. 1:21-mc-00813 (S.D.N.Y.) ................................................4

*In re Search Warrant for Secretarial Area Outside Office of Gunn*,
855 F.2d 569 (8th Cir. 1988) ...................................................5

*Nixon v. Warner Commc'ns, Inc.*,
435 U.S. 589 (1978) ..................................................................3

*Reporters Committee for Freedom of the Press v. U.S. Attorney's Office for the Southern District of New York*,
No. 1:18-mc-0320 (S.D.N.Y.) ..................................................8

*Richmond Newspapers, Inc. v. Virginia*,
448 U.S. 555 (1980) ...............................................................3, 6

*United States v. Assange*,
No. 1:18-cr-00111 (E.D. Va.) ..................................................4

Appellate Case: 22-3326     Page: 6     Date Filed: 02/07/2023 Entry ID: 5243321

*United States v. Reality Winner*,
No. 1:17-cr-34 (S.D. Ga.) .......................................................................9

## Constitutional Provisions

U.S. Const. amend. I ....................................................................*passim*

## Statutes

18 U.S.C. § 2703 .....................................................................2, 7

18 U.S.C. § 3123 ........................................................................2

## Rules

Fed. R. Crim. P. 41...................................................................2

## Other Authorities

Charlie Savage, *Assange Indicted Under Espionage Act, Raising First
Amendment Issues*, N.Y. TIMES (May 23, 2019),
https://www.nytimes.com/2019/05/23/us/politics/assange-
indictment.html ........................................................................4

Committee to Protect Journalists, *Journalists Attacked in USA between 1992
and 2023*,
https://cpj.org/data/location/?cc_fips=US&start_year=1992&end_year=2
023&report-builder-
type=year&motiveConfirmed%5B%5D=Confirmed&status%5B%5D=M
issing&status%5B%5D=Imprisoned (last visited Jan. 22, 2023).......................13

First Amend. Coalition, *FAC Succeeds In Unsealing Search Warrant
Executed On SF Journalist Bryan Carmody* (July 19, 2019),
https://firstamendmentcoalition.org/2019/07/fac-succeeds-in-unsealing-
search-warrant-executed-on-sf-journalist-bryan-carmody/.................................9

First Amend. Coalition, *Media Coalition Asks Court to Unseal Search
Warrant Targeting Protesters Kept Under Seal for Two Years* (Sept. 19,
2022), https://firstamendmentcoalition.org/2022/09/media-coalition-asks-
court-to-unseal-search-warrant-targeting-protesters-kept-under-seal-for-
two-years/.................................................................................9

Appellate Case: 22-3326     Page: 7     Date Filed: 02/07/2023 Entry ID: 5243321

John Reinan, *A dramatic clash during George Floyd protest turns into peaceful arrest in Minneapolis*, MINN. STAR TRIBUNE (June 1, 2020), https://www.startribune.com/a-dramatic-clash-during-george-floyd-protest-turns-into-peaceful-arrest-in-minneapolis/570918032/ ..........................12

Ken Ritter, *Jailed ex-politician indicted in killing of Vegas journalist*, AP NEWS (Oct. 21, 2022), https://apnews.com/article/nevada-las-vegas-government-and-politics-indictments-journalists-148a7cd5135ff90fe0277cc0791e6a4b ................................................................12

*Policies and Standards*, WASH. POST, https://www.washingtonpost.com/policies-and-standards/ ................................12

Spencer S. Hsu, *Mueller grand jury continuing 'robustly,' as U.S. prosecutors take over subpoena fight with foreign state-owned company*, WASH. POST (Mar. 27, 2019) ..............................................................................4

Appellate Case: 22-3326    Page: 8    Date Filed: 02/07/2023 Entry ID: 5243321

## INTEREST OF AMICI CURIAE

Amici are media organizations that report on current events in the public interest, including criminal prosecutions, law enforcement activity, and court proceedings, as well as academic centers and media consortia whose interests align with those of many media organizations. Court records like the ones at issue here are central to amici's stories, and amici rely on Petitioner-Appellant, the Reporters Committee for Freedom of the Press ("Reporters Committee"), and similar organizations to advocate on their behalf for access to records. Amici thus have a strong interest in the Reporters Committee's ability to seek access to these records through litigation.

A full list of amici appears in the Appendix.[1] Counsel for Petitioner-Appellant and counsel for Respondent-Appellee have indicated that both Petitioner-Appellant and Respondent-Appellee consent to the filing of this brief.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), amici state that no one, except counsel for amici, has authored this brief in whole or in part or contributed money toward the preparation of this brief.

1

# INTRODUCTION

The Reporters Committee, and the media organizations it acts in support of, have suffered an injury in fact stemming from the District of Minnesota's practice of blocking access to certain electronic surveillance records. Amici rely on these records to report on issues of tremendous public interest: public safety, criminal justice, and government surveillance. What is more, amici depend heavily on the Reporters Committee for their reporting, because the Reporters Committee is uniquely positioned to gain large-scale access to these records.

Nonetheless, the district court found that the Reporters Committee did not have standing to seek access to electronic surveillance records.[2] The practical implications of the ruling below are to ignore the Reporters Committee's role in aiding newsgathering efforts and thus to hinder the media's reporting in the public interest. This Court should reverse the district court's ruling.

---

[2] The Reporters Committee asked the district court to: (1) require the Clerk's Office to unseal all orders permitting searches or surveillance under 18 U.S.C. § 2703(d) of the Stored Communications Act ("SCA") and 18 U.S.C. § 3123 of the Pen Register Act ("PRA") (i.e., pen/trap orders), along with related application materials, 180 days after filing unless the government establishes that continued sealing is necessary to serve a compelling interest; and (2) require the Clerk's Office to create dockets for all applications seeking a warrant or surveillance order under five specific authorities including Federal Rule of Criminal Procedure 41, the SCA, and the PRA, regardless of the outcome of the applications.

Appellate Case: 22-3326    Page: 10    Date Filed: 02/07/2023 Entry ID: 5243321

**<u>DISCUSSION</u>**

## I.     The Press and the Public Have a Powerful Interest in Obtaining Access to Court Records

The press and the public have a presumptive constitutional right of access to judicial records and proceedings.  *See Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 606 (1982) ("[T]he right of access to criminal trials is of constitutional stature . . . ."); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) ("[A] presumption of openness inheres in the very nature of a criminal trial under our system of justice.").  This right stems from the First Amendment's protection of the press and of newsgathering.  *See Richmond Newspapers, Inc.*, 448 U.S. at 576–77 ("The explicit, guaranteed rights to speak and to publish concerning what takes place at a trial would lose much meaning if access to observe the trial could . . . be foreclosed arbitrarily."); *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972) ("[N]ews gathering does . . . qualify for First Amendment protection; without some protection for seeking out the news, freedom of the press could be eviscerated.").  In addition to the constitutional right, the press and the public have "a common-law right of access to judicial records."  *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).

The right of access is a vital component of the First Amendment's protection of newsgathering.  Records in criminal cases, like those at issue here, are among

Appellate Case: 22-3326     Page: 11     Date Filed: 02/07/2023 Entry ID: 5243321

the most important primary sources for reporting the news. For example, court

records obtained by the Reporters Committee have been central to high-profile

stories of great public interest:

- The Reporters Committee moved to unseal the criminal indictment against Julian Assange in 2019; the court unsealed the indictment, the docket, and other filings. *See In re Application of Reporters Committee for Freedom of the Press to Unseal Criminal Prosecution of Julian Assange*, No. 1:18-mc-00037 (E.D. Va.); *United States v. Assange*, No. 1:18-cr-00111 (E.D. Va.). With the unsealing of these materials, the news media was able to report on the charges against Assange for his role in publishing classified documents leaked by Chelsea Manning. *See, e.g.*, Charlie Savage, *Assange Indicted Under Espionage Act, Raising First Amendment Issues*, N.Y. TIMES (May 23, 2019), https://www.nytimes.com/2019/05/23/us/politics/assange-indictment.html.

- Also in 2019, the Reporters Committee moved to unseal, in the D.C. district court, D.C. Circuit, and Supreme Court, documents and proceedings relating to the "mystery" foreign company subpoenaed in connection with the Mueller investigation. *See In re Grand Jury Subpoena 7049*, GJ 18-41 (D.D.C.); *In re Grand Jury Subpoena*, No. 18-3071 (D.C. Cir.); *In re Grand Jury Subpoena*, No. 18A669 (U.S.). Many documents were unsealed as a result of the Reporters Committee's efforts. The media reported on this dispute throughout, emphasizing the court transparency issues surrounding it. *See, e.g.*, Spencer S. Hsu, *Mueller grand jury continuing 'robustly,' as U.S. prosecutors take over subpoena fight with foreign state-owned company*, WASH. POST (Mar. 27, 2019), https://www.washingtonpost.com/local/legal-issues/mueller-grand-jury-continuing-robustly-as-us-prosecutors-take-over-subpoena-fight-with-foreign-state-owned-company/2019/03/27/5dbaed3e-50b7-11e9-8d28-f5149e5a2fda_story.html.

- The Reporters Committee has a pending motion to unseal documents related to the November 2021 Rule 41 warrant to search the home of Project Veritas founder James O'Keefe. *See In re Search Warrant dated November 5, 2021*, No. 1:21-mc-00813 (S.D.N.Y.).

4

Without the freedom to access documents that reveal how the judicial and law enforcement systems are functioning, the press would be hamstrung in its reporting on these issues.

The presumptive right of access applies to the surveillance order and search warrant information sought here because these records enhance public oversight over prosecutorial and judicial conduct. *See In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988) ("[P]ublic access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct."). As the Reporters Committee argued below, "logic strongly supports a First Amendment right of access to pen/trap and 2703(d) materials" because "access is important to the public's understanding of the criminal justice system, and it enables public scrutiny of how the executive exercises its authority"; moreover, there is a strong presumption of access under the common law "because pen/trap and 2703(d) materials . . . have significant value to 'those monitoring the federal courts.'" Mem. in Support of Am. Appl., Doc. 36, at 19, 26 (citation omitted).

The press plays a crucial role as steward of the public's ability to self-govern. By reporting on law enforcement surveillance tactics and judicial

5

authorization thereof, the press enables public scrutiny of government conduct, further justifying access to these records.  *See Richmond Newspapers, Inc.*, 448 U.S. at 593 ("[W]ith respect to judicial proceedings in particular, the function of the press serves to guarantee the fairness of trials and to bring to bear the beneficial effects of public scrutiny upon the administration of justice." (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975))).  As explained in more detail in the next section, amici rely on the Reporters Committee and similar organizations to gain access to the kinds of electronic surveillance records sought here—records that are critical to the press's newsgathering efforts and its function in helping the public keep government accountable.  The Reporters Committee in particular has been playing this important role for over fifty years.

## II.  Advocacy Organizations Like the Reporters Committee Are Uniquely Positioned to Seek Access on a District-Wide Basis to Electronic Surveillance Records for the Benefit of the News Media

The Reporters Committee has a long track record of successfully seeking access to electronic surveillance records that aid the press's reporting on criminal issues, underscoring its significant role in helping individual media organizations gain access to such records on a large scale.

Most notably, the Reporters Committee won broad access to the same kinds of records it seeks here in *In re Application of Jason Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, No. 1:13-mc-00712 (D.D.C).  In

6

that case, the Reporters Committee, after successfully intervening in a petition

brought by investigative reporter Jason Leopold, made two general requests. It

sought to unseal materials for SCA warrants, § 2703(d) orders, and pen/trap orders

in closed investigations going back more than ten years. It also sought prospective

access to the court docket sheets for those materials as well as the eventual

unsealing of the underlying materials themselves. After considerable negotiation

between the Reporters Committee on the one hand and the clerk's office and U.S.

Attorney's Office on the other, the government agreed to provide limited docket

information for future surveillance matters, but Chief Judge Beryl Howell of the

district court later denied additional relief. On appeal, the D.C. Circuit ruled in

favor of the Reporters Committee in an opinion by then-Judge Merrick Garland,

reversing the district court and directing it to provide greater access to the

requested information. *In re Leopold to Unseal Certain Elec. Surveillance*

*Applications & Orders*, 964 F.3d 1121, 1134–35 (D.C. Cir. 2020).

    *Leopold* highlights the important role the Reporters Committee plays in

gaining large-scale access to electronic surveillance records and seeking broad

systemic relief as to a district's sealing and docketing practices. In *Leopold*, the

Reporters Committee collaborated extensively with the government to implement

changes to the district's sealing and docketing practices, and it is well positioned to

engage in such negotiations because of its role as an advocacy organization. That

7

the relief sought in this case is systemic, rather than specific, makes an advocacy organization like the Reporters Committee the most appropriate party to bring the claim; such relief would not necessarily be sought by an individual media entity, let alone an individual reporter. At no point did the court or the government in *Leopold* question the Reporters Committee's standing to pursue this relief.

Other examples of the Reporters Committee's successful efforts to gain access to electronic surveillance records include the following:

- In *Reporters Committee for Freedom of the Press v. U.S. Attorney's Office for the Southern District of New York*, No. 1:18-mc-0320 (S.D.N.Y.), the Reporters Committee requested that the clerk's office make public the dockets for SCA warrant applications filed in 2017 and unseal related materials for closed investigations. Through negotiation with the clerk's office and U.S. Attorney's Office for the Southern District of New York, the Reporters Committee has achieved significant prospective changes in how the district dockets electronic surveillance matters.

- The Reporters Committee has successfully moved to unseal the electronic surveillance (PRA and SCA) and Rule 41 warrant materials connected to every criminal prosecution of government whistleblowers during the Obama and Trump administrations.[3]

---

[3] These cases are:

- *In re Application of Reporters Committee for Freedom of the Press for Access to Certain Sealed Court Records*, No. 1:17-cv-00169 (D. Md.) (related to investigation and prosecution of Thomas Andrews Drake);

- *In re Application of Reporters Committee for Freedom of the Press for Access to Certain Sealed Court Records*, No. 1:16-mc-02183 (D.D.C.) (related to investigation and prosecution of Stephen Jin-Woo Kim);

The Reporters Committee is not the only group that helps the press gain access to important records in criminal cases. Other advocacy organizations, like the First Amendment Coalition, have successfully moved to unseal warrants and similar documents. *See, e.g.*, First Amend. Coalition, *Media Coalition Asks Court to Unseal Search Warrant Targeting Protesters Kept Under Seal for Two Years* (Sept. 19, 2022), https://firstamendmentcoalition.org/2022/09/media-coalition-asks-court-to-unseal-search-warrant-targeting-protesters-kept-under-seal-for-two-years/; First Amend. Coalition, *FAC Succeeds In Unsealing Search Warrant Executed On SF Journalist Bryan Carmody* (July 19, 2019), https://firstamendmentcoalition.org/2019/07/fac-succeeds-in-unsealing-search-

---

- *In re Application of Reporters Committee for Freedom of the Press for Access to Certain Sealed Court Records*, No. 1:17-mc-00008 (S.D. Ind.) (related to investigation and prosecution of Donald John Sachtleben);

- *In re Application of Reporters Committee for Freedom of the Press for Access to Certain Sealed Court Records*, No. 1:17-mc-00002 (E.D. Va.) (related to investigation and prosecution of John C. Kiriakou);

- *In re Application of Reporters Committee for Freedom of the Press for Access to Certain Sealed Court Records*, No. 1:17-mc-00142 (D.D.C.) (related to investigation and prosecution of James E. Cartwright);

- *United States v. Reality Winner*, No. 1:17-cr-34 (S.D. Ga.) (investigation and prosecution of Reality Winner, in which the Reporters Committee successfully moved to intervene); and

- *In re Application of Reporters Committee for Freedom of the Press for Access to Certain Sealed Court Records*, No. 0:18-mc-00085 (D. Minn.) (related to investigation and prosecution of Terry J. Albury).

9

warator-executed-on-sf-journalist-bryan-carmody/.  The ruling below could also affect these organizations' standing to sue for access to records.

In short, these numerous instances of advocacy groups' successful efforts to gain access to electronic surveillance records, particularly where an individual media organization may not be well positioned to do so, highlight why it is important for organizations like the Reporters Committee to be able to sue for the benefit of the news media.

### III. Jurisdictional Hurdles to Accessing Records Create Significant Consequences for Newsgathering

By imposing limitations on standing in access cases, the ruling below hinders the press's newsgathering efforts—efforts that are protected by the First Amendment.  *See Branzburg*, 408 U.S. at 681.

The district court found that the Reporters Committee's "interest in observing and understanding the work of federal trial courts—an interest the Committee itself describes as being shared with 'all members of the public and press'"—was a "generalized, abstract interest in the proper application of the law that the Supreme Court has repeatedly held does *not* suffice to establish injury-in-fact."  Order, Doc. 54, at 6–7; AD-6–AD-7.  But the Reporters Committee's injury is not merely the violation of the law; it is the lack of access to information that the "proper application of the law" would remedy.

That this injury is "shared by a large segment of the citizenry," including the news media, does not make the injury less concrete. *Doe v. Pub. Citizen*, 749 F.3d 246, 264 (4th Cir. 2014). As explained above, the very role of the media is to press the government for transparency on behalf of the citizenry. And the Reporters Committee supports that role by acting on behalf of the media in seeking access to records and through other forms of litigation. Courts have recognized the notion that an organization can stand in the shoes of other parties in interest to vindicate their First Amendment rights. *Cf. Amazon.com LLC v. Lay*, 758 F. Supp. 2d 1154, 1162, 1167 (W.D. Wash. 2010) (book seller may sue on behalf of book buyers to prevent disclosure of identities of purchasers of certain books on the grounds that doing so would violate buyers' First Amendment rights).

The district court acknowledged that a litigant who is denied access to records suffers an Article III injury, but it maintained that the Reporters Committee was not in fact seeking to review specific records. Order, Doc. 54, at 7–8; AD-7–AD-8. This point ignores the fact that the press often will not learn about newsworthy information until the materials are docketed or unsealed, and the relief sought here is a court-wide remedy to that problem.

For example, many of the records sought correspond with the timing of the Minneapolis protests in the wake of George Floyd's murder. These are of particular significance to local news organizations in Minnesota. *See, e.g.*, John

Reinan, *A dramatic clash during George Floyd protest turns into peaceful arrest in Minneapolis*, MINN. STAR TRIBUNE (June 1, 2020), [https://www.startribune.com/a-dramatic-clash-during-george-floyd-protest-turns-into-peaceful-arrest-in-minneapolis/570918032/](https://www.startribune.com/a-dramatic-clash-during-george-floyd-protest-turns-into-peaceful-arrest-in-minneapolis/570918032/).  These organizations may not know of newsworthy criminal proceedings related to the protests until the records are docketed and/or unsealed.

The district court also appeared to endorse a hypothetical petition for "many years' worth of surveillance-application materials," but only when an individual researcher or journalist seeks the information.  Order, Doc. 54, at 8–9; AD-8–AD--9.  The implications of such a requirement are troubling.  The reality of much investigatory reporting is that newspapers may not want to name the journalist who is doing the work, especially while the investigation or research is ongoing.  Not only do newspapers aim to focus on the reporting rather than the reporter, *see Policies and Standards*, WASH. POST, [https://www.washingtonpost.com/policies-and-standards/](https://www.washingtonpost.com/policies-and-standards/) ("[R]eporters should make every effort to remain in the audience, to be the stagehand rather than the star, to report the news, not to make the news."), but they also are wary of exposing journalists to the often dangerous backlash to reporting on sensitive or high-profile issues, as in the case of a politician who was indicted for murdering an investigative journalist after the journalist wrote articles critical of him and his managerial conduct.  *See* Ken Ritter, *Jailed ex-politician*

12

*indicted in killing of Vegas journalist*, AP NEWS (Oct. 21, 2022), https://apnews.com/article/nevada-las-vegas-government-and-politics-indictments-journalists-148a7cd5135ff90fe0277cc0791e6a4b.  Indeed, five U.S. journalists have been murdered in just the past ten years.  *See* Committee to Protect Journalists, *Journalists Attacked in USA between 1992 and 2023*, https://cpj.org/data/location/?cc_fips=US&start_year=1992&end_year=2023&report-builder-type=year&motiveConfirmed%5B%5D=Confirmed&status%5B%5D=Missing&status%5B%5D=Imprisoned (last visited Jan. 22, 2023).

By erecting barriers to who can sue for access to records and under what circumstances, the ruling below makes it much more difficult for media organizations like amici to view documents that are crucial to their reporting in the public interest.

## **CONCLUSION**

This Court should reverse the district court's ruling that the Reporters Committee lacks standing to seek access to electronic surveillance records.

DATED this 2nd day of February, 2023.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:  */s/ Laura Handman*
      Laura Handman
      Marietta Catsambas

Attorneys for Amici Curiae Media Organizations

13

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the requirements of Federal Rule of Appellate Procedure 29(a)(4). The brief is proportionally spaced in Times New Roman 14-point type. According to the word-count function of Microsoft Word, the word count of the brief is 2,925, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). Pursuant to Eighth Circuit Rule 28A(h)(2), this brief has been scanned for viruses and the brief is virus-free.

DATED this 2nd day of February, 2023.

DAVIS WRIGHT TREMAINE LLP

By: */s/ Laura Handman*
    Laura Handman

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2023, I electronically filed the foregoing document with the Clerk of the Court of the United States Court of Appeals for the Eighth Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

DATED this 2nd day of February, 2023.

DAVIS WRIGHT TREMAINE LLP

By: */s/ Laura Handman*
Laura Handman

15

# APPENDIX

Appellate Case: 22-3326    Page: 24    Date Filed: 02/07/2023 Entry ID: 5243321

Descriptions of amici:

**The Arkansas Times** is a lively, opinionated source for news, politics, and culture in Arkansas, founded in 1974.

**Courthouse News Service** is a nationwide news service for lawyers and the news media. Based in Pasadena, California, Courthouse News focuses on civil litigation, from the date of filing through the appellate level. Courthouse News publishes its own original news content prepared by its staff of reporters and editors based across the country.

**Gannett Co., Inc.** is a leading news and information company which publishes USA TODAY and more than 100 local media properties. Each month more than 125 million unique visitors access content from USA TODAY and Gannett's local media organizations, putting the company squarely in the Top 10 U.S. news and information category.

**The Iowa Freedom of Information Council** is an independent 501(c)(3) nonpartisan, nonprofit coalition of journalists, librarians, lawyers, educators, and other Iowans who are devoted to open government.

**Minnesota Public Radio** ("MPR") operates a 46-station radio network serving almost all of Minnesota and parts of surrounding states for more than 50 years. MPR reaches nearly 1 million weekly listeners. MPR and its three regional

17

services—MPR News, YourClassical MPR, and The Current—produce programming for radio, digital, and live audiences.

**Public Record Media** is a Minnesota-based nonprofit organization focused on government records transparency.

**The Silha Center for the Study of Media Ethics and Law** was established in 1984 with an endowment from Otto and Helen Silha.  Located within the Hubbard School of Journalism and Mass Communication at the University of Minnesota, the Silha Center is the vanguard of the School's interest in the ethical responsibilities and legal rights of the mass media in a democratic society.

18