# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS,

PETITIONER-APPELLANT,

v.

UNITED STATES OF AMERICA,

RESPONDENT-APPELLEE.

On Appeal from the United States District Court
for the District of Minnesota
Case No. 20-mc-82-PJS-TNL
The Honorable Patrick J. Schlitz, United States District Court Judge

## BRIEF OF *AMICI CURIAE* ELECTRONIC FRONTIER FOUNDATION AND AMERICAN CIVIL LIBERTIES UNION IN SUPPORT OF PETITIONER-APPELLANT

Scarlet Kim
Brett Max Kaufman
Jennifer Granick
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
Email: scarletk@aclu.org

Sophia Cope
Aaron Mackey
ELECTRONIC FRONTIER
FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Fax: (415) 436-9993
Email: sophia@eff.org

*Counsel for Amici Curiae*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amici curiae* Electronic Frontier Foundation and American Civil Liberties Union state that they do not have parent corporations, and that no publicly held corporation owns 10% or more of the stock of *amici*.

Dated: February 2, 2023

/s/ Sophia Cope
Sophia Cope

*Counsel for Amici Curiae*

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT .......................................i

TABLE OF AUTHORITIES.................................................iv

STATEMENT OF INTEREST OF *AMICI* ............................1

INTRODUCTION ..................................................................2

ARGUMENT ........................................................................4

    I.    ADVOCACY ORGANIZATIONS HAVE STANDING TO SEEK UNSEALING OF JUDICIAL RECORDS TO VINDICATE THE PUBLIC'S ESSENTIAL ROLE OVERSEEING THE JUDICIAL AND EXECUTIVE BRANCHES ......................................4

        A.    The Reporters Committee Sufficiently Demonstrated It Had Standing to Seek to Unseal Judicial Records...............................5

        B.    *Amici* and Other Advocacy Organizations Are Among the Relatively Few Members of the Public With the Litigation Resources to Seek to Unseal Judicial Records.............................9

        C.    Requiring Organizations to Plead a Specific Interest in Sealed Judicial Records Ignores the Purpose of the Presumption of Public Access ..............................................................13

    II.    *AMICI*'S ABILITY TO SEEK ACCESS TO JUDICIAL RECORDS IS CENTRAL TO THEIR MISSIONS TO INFORM THE PUBLIC AND TO ENGAGE IN ADVOCACY ON IMPORTANT ISSUES.................................................15

        A.    Access to Judicial Records Helps Shed Light on Controversial Government Surveillance and Informs Debate About the Legal Limits of Those Activities ................................16

            1.    The FBI's Use of Surveillance Software to Identify Otherwise Anonymous Internet Users.............................16

            2.    Obtaining Basic Information About State Law Enforcement's Extensive Use of Invasive Cell-Site Simulators .......................................................19

Appellate Case: 22-3326    Page: 3    Date Filed: 02/07/2023 Entry ID: 5243332

3.    Exposing How The Government Conceals The Use of Controversial Foreign-Intelligence Surveillance in Ordinary Criminal Prosecutions ........................................21

4.    Making Public Basic Details Regarding Law Enforcement's Use of Non-Warrant Legal Process to Obtain People's Private Information ................................23

B.    Access to Civil Litigation Records Has Helped Inform Public Debate About the Patent System and Innovation........................25

1.    Court Records Describe Effort by Non-Practicing Entity to Obtain Payments Via Patent Licenses Rather Than Use The Patents .................................................................25

2.    Intervening to Ensure That Judicial Opinions Settling Patent Disputes Are Publicly Accessible........................27

CONCLUSION ........................................................................................28

CERTIFICATE OF COMPLIANCE WITH RULE 32 ........................30

CERTIFICATE OF COMPLIANCE WITH EIGHTH CIRCUIT RULE 28A(h) ..................................................................................................31

CERTIFICATE OF SERVICE..............................................................32

# TABLE OF AUTHORITIES

**Cases**

*ACLU Foundation v. USDOJ,*
    No. 19-15472 (9th Cir. Sept. 14, 2020) ...............................................10

*ACLU v. DOJ,*
    2021 WL 4481784 (N.D. Cal. Sept. 30, 2021) ......................................2

*Alderman v. United States,*
    394 U.S. 165 (1968)..............................................................................22

*Blue Spike, LLC v. Audible Magic Corp.,*
    2016 WL 9275966  (E.D. Tex. May 17, 2016)......................................27

*Carlson v. United States,*
    837 F.3d 753 (7th Cir. 2016) ...............................................................14

*Carpenter v. United States,*
    138 S. Ct. 2206 (2018 ......................................................................2, 24

*Doe v. Pub. Citizen,*
    749 F.3d 246 (4th Cir. 2014) ............................................................5, 14

*EFF v. DOJ,*
    384 F. Supp. 3d. 1 (D.D.C. 2019) .........................................................1

*EFF v. San Bernardino County Superior Court,*
    83 Cal.App.5th 407 (Ca. Ct. App. 2022) ......................................1, 7, 20

*FTC v. Std. Fin. Mgmt. Corp.,*
    830 F.2d 404 (1st Cir. 1987)..................................................................3

*Grae v. Corr. Corp. of Am.,*
    57 F.4th 567, (6th Cir. 2023) .................................................................8

*Herring v. United States,*
    555 U.S. 135 (2009)................................................................................2

*In re Opinions & Orders of this Court Addressing Bulk Collection of
    Data under the Foreign Intelligence Surveillance Act,*
    2017 WL 5983865 (FISC. Nov. 9, 2017) ...........................................7, 9

Appellate Case: 22-3326     Page: 5     Date Filed: 02/07/2023 Entry ID: 5243332

*In re Petition of Index Newspapers LLC d/b/a The Stranger*,
No. 17-mc-00145 (W.D. Wash. Nov. 15, 2017) ................................1, 11, 23, 25

*In re Sealed Docket Sheet Associated With Malware Warrant Issued
on July 22, 2013*,
No. 1:16-mc-00635 (D. Md. Aug. 29, 2016) ......................................................17

*In re Search Warrant for Secretarial Area Outside Off. Of Gunn*,
855 F.2d 569 (8th Cir. 1988) ..........................................................................4, 14

*In re Warrant to Search a Target Computer at Premises Unknown*,
958 F. Supp. 2d 753 (S.D. Tex. 2013) ................................................................18

*In re: Certification of Questions of Law to the Foreign Intelligence
Surveillance Court of Review*,
No. 18-01, 2018 WL 2709456 (FISCR March 16, 2018)..................................2, 8

*Kamakana v. City and County of Honolulu*,
447 F.3d 1172 (9th Cir. 2006) ............................................................................13

*N.Y. Civil Liberties Union v. N.Y. Transit Authority*,
684 F.3d 286 (2d Cir. 2011).............................................................................6, 7

*Pansy v. Borough of Stroudsburg*,
23 F.3d 772 (3d Cir. 1994)....................................................................................7

*Pub. Citizen v. DOJ*,
491 U.S. 440 (1989)...............................................................................................5

*Richmond Newspapers, Inc. v. Virginia*,
448 U.S. 555 (1980).........................................................................................2, 14

*Riley v. California*,
573 U.S. 373 (2014)...............................................................................................2

*Sander v. State Bar of California*,
58 Cal.4th 300 (2013) ............................................................................................7

*Smith v. U.S. Dist. Ct.*,
956 F.2d 647 (7th Cir. 1992) .................................................................................3

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021)...........................................................................................8

Appellate Case: 22-3326    Page: 6    Date Filed: 02/07/2023 Entry ID: 5243332

*U.S. v. Henderson*,
No. 17-10230 (9th Cir. Oct. 31, 2017)....................................................19

*U.S. v. Tippens*,
No. 17-30117 (9th Cir. Oct. 20, 2017)....................................................19

*Uniloc USA, Inc. v. Apple, Inc.*,
No 18-cv-00358 (N.D. Cal. Aug. 22, 2022) ..................................12, 26

*Uniloc v. Apple*,
508 F. Supp. 3d 550 (N.D. Cal. 2020) ....................................11, 12, 26

*Union Oil Co. of California v. Leavell*,
220 F.3d 562 (7th Cir. 2000) ...............................................................14

*United States v. Ganzer*,
922 F.3d 579 (5th Cir. 2019) ...............................................................18

*United States v. Osseily*,
No. 8:19-cr-00117 (C.D. Cal. July 8, 2020) ..................................21, 22

## Statutes

18 U.S.C. § 2518(8)(b) ..............................................................................10

18 U.S.C. § 2703(d)....................................................................................25

5 U.S.C. § 552(a)(3) .....................................................................................9

5 U.S.C. § 552(a)(4) .....................................................................................9

## Other Authorities

Aaron Mackey & Dave Maass, *EFF Continues Legal Fight to Release
Records Showing How Law Enforcement Uses Cell-Site Simulators*,
EFF Deeplinks (Dec. 17, 2021) ............................................................20

Aaron Mackey, *Court Report Provides New Details About How Federal
Law Enforcement in Seattle Obtain Private Information Without Warrants*,
EFF Deeplinks (Feb. 24, 2020)..............................................................24

Aaron Mackey, *Victory! Court Unseals Records Showing Patent Troll's
Shakedown Efforts*, EFF Deeplinks (Sept. 30, 2022)...............25, 26, 27

Appellate Case: 22-3326    Page: 7    Date Filed: 02/07/2023 Entry ID: 5243332

*ACLU Comments on the Proposed Amendment to Rule 41 Concerning Remote Searches of Electronic Media* (April 4, 2014) ........................................18

Ashley Gorski & Patrick Toomey, *The Government is Using its Foreign Intelligence Spying Powers for Routine Domestic Investigations*, ACLU (Feb. 5, 2020) ........................................................................................23

Christopher Damien & Evan Wyloge, *In San Bernardino County, you're 20 times more likely to have your Facebook, iPhone secretly probed by police*, Palm Springs Desert Sun (July 23, 2018) ............................................19

EFF, ACLU, & NACDL, *Challenging Government Hacking In Criminal Cases* (March 2017) ..................................................................................19

*IP Address*, Dictionary.com ....................................................................................17

Matthew Guariglia, *Judge Upends Vallejo's Use of a Stingray*, EFF Deeplinks (Oct. 2, 2020) ..................................................................20

*Patent Assertion Entity Activity: An FTC Study*, Federal Trade Commission (Oct. 2016) ........................................26, 27

*Pilot Program re Applications and Orders for Pen Registers and Trap and Trace Devices and re 2703(d)*, United States District Court, Western District of Washington ..........................24

Sam Sabin, *A major government surveillance power faces big questions in 2023*, Axios (Jan. 17, 2023) ................................................................................23

Stephen Wm. Smith, *Gagged, Sealed & Delivered: Reforming ECPA's Secret Docket*, 6 Harv. L. & Pol'y Rev. 313 (2012) ....................................................25

Stephen Wm. Smith, *Kudzu in the Courthouse: Judgments Made in the Shade*, 3 Fed. Cts. L. Rev. 177 (2009) ..........................................................10, 13

*The Stranger Unsealing*, EFF ..................................................................................1

*Uniloc v. Apple*, EFF ........................................................................................11, 25

Vera Ranieri, *A Bit More Transparency in Patent Lawsuits*, EFF Deeplinks (Nov. 2, 2016) ..........................................................................28

Appellate Case: 22-3326     Page: 8     Date Filed: 02/07/2023 Entry ID: 5243332

## STATEMENT OF INTEREST OF *AMICI*[1]

The Electronic Frontier Foundation ("EFF") is a member-supported, nonprofit civil liberties organization that works to protect free speech and privacy in the digital world. Founded in 1990, EFF has over 39,000 members. EFF advocates for internet users' privacy and frequently seeks access to public records reflecting law enforcement surveillance by litigating Freedom of Information Act ("FOIA") requests and petitioning state and federal courts to unseal judicial records. *See, e.g., EFF v. DOJ*, 384 F. Supp. 3d. 1 (D.D.C. 2019) (seeking records regarding FBI's informant program for Best Buy computer repair employees); *EFF v. San Bernardino County Superior Court*, 83 Cal.App.5th 407 (Ca. Ct. App. 2022) (seeking to unseal search warrant affidavits reflecting law enforcement's use of cell-site simulators). EFF has also served as counsel to parties seeking to unseal court records. *See In re Petition of Index Newspapers LLC d/b/a The Stranger*, No. 17-mc-00145 (W.D. Wash. Nov. 15, 2017) (news media seeking access to sealed electronic surveillance dockets, applications, and court orders) ("*Index Newspapers*").[2]

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *amici curiae* certify that no person or entity, other than *amici curiae*, their members, or their counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part. The parties have consented to the filing of this brief.

[2] *See The Stranger Unsealing*, EFF, https://www.eff.org/cases/stranger-unsealing.

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization with approximately two million members and supporters dedicated to the principles of liberty and equality embodied in the Constitution and our nation's civil rights laws. The ACLU has frequently appeared before the Supreme Court and other federal courts in numerous cases implicating the right to privacy. *See, e.g., Carpenter v. United States*, 138 S. Ct. 2206 (2018) (counsel); *Riley v. California*, 573 U.S. 373 (2014) (*amicus*); *Herring v. United States*, 555 U.S. 135 (2009) (*amicus*). The ACLU frequently seeks access to public records related to government surveillance by litigating FOIA requests and petitioning courts to unseal judicial records. *See, e.g.*, *ACLU v. DOJ*, 2021 WL 4481784 (N.D. Cal. Sept. 30, 2021) (seeking records regarding seven federal agencies' social media surveillance); *In re: Certification of Questions of Law to the Foreign Intelligence Surveillance Court of Review*, No. 18-01, 2018 WL 2709456 (FISCR March 16, 2018) (seeking to unseal opinions of the Foreign Intelligence Surveillance Court) ("*In re Certification*").

## INTRODUCTION

Public access to judicial records is essential "to achieve the objective of maintaining public confidence in the administration of justice." *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 595 (1980). When judicial records are sealed, every member of the public has a right to step forward and seek access to

Appellate Case: 22-3326    Page: 10    Date Filed: 02/07/2023 Entry ID: 5243332

them. The district court's decision jeopardizes the public's ability—and that of advocacy organizations like *amici*—to shed light on the operations of the courts: what decisions they make, how they justify those decisions, and how efficient they are in doing so, to ensure that justice is served. Just as importantly, judicial records shrouded in secrecy can shield from public view what the courts authorize the *executive* branch to do. When judicial records reveal law enforcement and intelligence agencies exercising their surveillance authorities to enter and search homes, wiretap phones, and search emails, among other activities "the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Smith v. U.S. Dist. Ct.*, 956 F.2d 647, 650 (7th Cir. 1992) (quoting *FTC v. Std. Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)). These activities—sanctioned by a court—implicate people's free speech and privacy rights, both in the physical world and digitally.

Plaintiff Reporters Committee for Freedom of the Press ("Reporters Committee") sought precisely these records. By denying the Reporters Committee standing, the district court's decision threatens *amici*'s ability to defend the public's First and Fourth Amendment rights implicated by law enforcement surveillance. But as this Court has recognized, public access to judicial records is important precisely because disclosure "may operate as a curb on prosecutorial or

3

judicial misconduct." *In re Search Warrant for Secretarial Area Outside Off. Of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988) ("*Gunn*").

Advocacy organizations like *amici* and the Reporters Committee play a critical role in promoting transparency and greater public oversight of courts, the government, or private parties appearing before them. While *amici* and the Reporters Committee have distinct missions, they all regularly seek access to judicial records to accomplish their work. And often, the records *amici* and Reporters Committee seek are sealed in their entirety, making it so that the public has no basic information about an entire class of judicial acts. A necessary predicate to using judicial records in support of their missions is the organizations' standing to seek public access to them. The district court's decision threatens *amici*'s abilities to promote judicial transparency, oversee the activities of courts and the parties before them, and advocate for greater legal protections for those subjected to government surveillance.

## ARGUMENT

### I. ADVOCACY ORGANIZATIONS HAVE STANDING TO SEEK UNSEALING OF JUDICIAL RECORDS TO VINDICATE THE PUBLIC'S ESSENTIAL ROLE OVERSEEING THE JUDICIAL AND EXECUTIVE BRANCHES

The presumption of public access assumes that every judicial record is of interest to the public. The district court's order defies this basic principle by requiring the Reporters Committee to allege a concrete plan to use the sealed

Appellate Case: 22-3326    Page: 12    Date Filed: 02/07/2023 Entry ID: 5243332

records in some specific way. R. Doc. 54, 8-10. But that is not what standing in this context requires, under a long line of unsealing cases that broadly open docket details, case files, and other court papers to the public. *See, e.g.*, *Pub. Citizen v. DOJ*, 491 U.S. 440, 449 (1989) (inability to access information subject to a claimed right of public access satisfied Article III's injury-in-fact requirement); *Doe v. Pub. Citizen*, 749 F.3d 246, 262-63 (4th Cir. 2014) (same).

The consequences of the district court's order will frustrate public access to court records more broadly, as advocacy organizations like the Reporters Committee and *amici* are frequently the only members of the public with the resources and expertise to assert their rights to access judicial records. Practically speaking, the district court's order will also impede public access to sealed records because in many situations it is impossible to explain the value of the information contained in those materials—or how an organization might use them—precisely because no member of the public has yet viewed them.

A.     **The Reporters Committee Sufficiently Demonstrated It Had Standing to Seek to Unseal Judicial Records**

The district court's conclusion that the Reporters Committee lacks standing because its unsealing motion alleges a generalized, abstract interest rather than a particularized injury was wrong. In public access cases, that an organization (or a person) shares an interest in access to judicial records with the broader public is not a basis upon which to deny standing. *Amici* agree with the Reporters

5

Committee's argument that the district court's decision erroneously raises the bar for standing in unsealing cases far above what has been the prevailing standard in the federal courts. *See* Appellant's Opening Brief ("AOB") 24-29. Beyond that, a*mici* wish to underscore a few points.

Like any other member of the public seeking to vindicate the right to access judicial records in federal court, the Reporters Committee must show a concrete, particularized injury under Article III of the U.S. Constitution. *See N.Y. Civil Liberties Union v. N.Y. Transit Authority* ("*NYCLU*"), 684 F.3d 286, 294 (2d Cir. 2011) ("Under this theory of 'organizational' standing, the organization is just another person—albeit a legal person—seeking to vindicate a right."). The Reporters Committee satisfied this basic standard by describing in its amended application its work on behalf of the public, and by filing a request for sealed records. *See* R. Doc. 35, at ¶¶ 1-3.

When "an organization with goals and projects of its own" alleges that it is seeking to vindicate its own access rights, that is sufficient to confer standing. *NYCLU*, 684 F.3d at 295. Critically, the district court's conclusion that the Reporters Committee's interests were co-extensive with the broader public's interest in judicial records is not relevant to Article III standing in the context of public access. What is relevant is that the Reporters Committee filed its petition and sought to vindicate *its* public access rights—it was the party that stepped

Appellate Case: 22-3326     Page: 14     Date Filed: 02/07/2023 Entry ID: 5243332

forward. *See EFF*, 83 Cal.App.5th at 416 ("EFF, like every other member of the public, 'has a legitimate interest and right of general access to court records' and thus has standing to sue to unseal the search warrants." (quoting *Sander v. State Bar of California*, 58 Cal.4th 300, 318 (2013)).

Specifically, the Reporters Committee alleges that in sealing certain judicial records subject to the petition, the district court had prevented it from accessing presumptively public judicial records. *See* R. Doc. 35, at ¶¶ 1-3; AOB 7-10. If the Reporters' Committee injury seems basic, that is because its burden for standing is, too. Alleging exclusion from presumptively public records or proceedings constitutes a concrete injury for the purpose of Article III standing. *See NYCLU*, 684 F.3d at 295.

There is simply not much more to it: so long as an organization alleges that a court order or practice, like sealing, "presents an obstacle" to a legal right to access judicial records or proceedings, that is sufficient to demonstrate injury. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994). Impeding public access is an injury "that courts have repeatedly held is capable of 'being known or recognized.'" *In re Opinions & Orders of this Court Addressing Bulk Collection of Data under the Foreign Intelligence Surveillance Act*, 2017 WL 5983865, at *5 (FISC. Nov. 9, 2017) (en banc) (discussing cases) ("*In re Opinions & Orders*").

The Foreign Intelligence Surveillance Court of Review—which, along with

the Foreign Intelligence Surveillance Court that it supervises, operates in almost total secrecy—recently endorsed this principle in a case where *amicus* ACLU and other organizations sought the unsealing of redacted portions of four of the court's opinions. The FISCR explained that "the asserted injury is the *denial of access* to the entirety of the four FISC opinions sought by the movants." *See In re Certification*, 2018 WL 2709456, at *4 (emphasis added).[3] That injury, the court concluded, was "judicially cognizable." *Id*. at *7.

As the FISCR made clear, courts should not confuse "whether the movants have a First Amendment right of access to" judicial records on the merits (that is, whether they will succeed in winning their requested relief) "with the question of whether they have a right merely to *assert* that claim" (that is, whether they have standing). *Id.* at *5. "At bottom, the legally-protected-interest test is not concerned with determining the proper scope of the First Amendment right or whether a plaintiff is correct that such right has in fact been invaded; that is a merits inquiry."

---

[3] A recent Sixth Circuit decision incorrectly held that parties asserting a right of access to judicial records lacked standing unless they could assert some adverse effect of that denial. *Grae v. Corr. Corp. of Am.*, 57 F.4th 567, 2023 WL 179767 (6th Cir. 2023). The panel majority incorrectly imported the adverse effects test from *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). *See id*. at *2. Yet as the *Grae* dissent shows, the Supreme Court explicitly held in *Transunion* that it did not affect its prior decisions affirming that the denial of access to government proceedings or records constituted an injury sufficient to establish standing. *Id*. at *4-7 (Gibbons J. dissenting). This Court should not make the same mistake that the *Grae* majority did.

*In re Opinions & Orders* at *5. To the extent the district court had concerns about the *relief* the Reporters Committee sought, that is a merits question distinct from whether the organization had standing to seek it.

> **B.** ***Amici* and Other Advocacy Organizations Are Among the Relatively Few Members of the Public With the Litigation Resources to Seek to Unseal Judicial Records**

The district court's holding threatens entities that are often best positioned to vindicate the public's right of access. Although judicial records are presumptively public, the reality is that many records are sealed for a variety of reasons. And those records might remain sealed, sometimes indefinitely, because the public either does not know of their existence or lacks the resources to initiate litigation seeking their disclosure. Petitioning a court to unseal judicial records is a resource-intensive task, especially compared to, for example, filing a Freedom of Information Act request seeking the disclosure of federal agency records. *See* 5 U.S.C. §§ 552(a)(3)-(4) (enabling any person to seek agency records via a written request). Unsealing court records requires knowledge of the substantive rights of public access and the procedures that enable the public to intervene or otherwise petition a court to unseal records. Organizations like *amici* and the Reporters Committee have the resources, time, and expertise to seek access to sealed records. *See* R. Doc. 56, at 2 (RCFP Mot. for Leave to Seek Reconsideration describing publicly available examples of the fruits of its unsealing work).

9

The Reporters Committee's unsealing petition is a prime example of how secrecy can frustrate the public's ability to even learn about the existence of certain judicial records, in this case, law enforcement requests for court authorization to engage in surveillance or to obtain people's private data. These requests, which can take the form of subpoenas, court orders, search warrants, or Title III wiretap requests, are usually obtained in secret and *ex parte*. There is often good reason for secrecy at that initial stage. *See, e.g.*, 18 U.S.C. § 2518(8)(b) ("Applications made and orders granted under this chapter shall be sealed by the judge."). But the reality is that the courts that issue these surveillance orders and the law enforcement officials who seek them rarely revisit them and later consider making them public.[4]

As organizations with interest in government surveillance and transparency, *amici* have sought to unseal these kinds of judicial records or represented other organizations seeking that relief. The existence of the records may not be publicly known beyond news reports or may require investigating court docketing practices—which the average member of the public is unlikely to do. *See ACLU Foundation v. USDOJ*, No. 19-15472 (9th Cir. Sept. 14, 2020) (ACLU and EFF seeking to unseal a wiretap technical assistance order and related judicial records

---

[4] *See* Stephen Wm. Smith, *Kudzu in the Courthouse: Judgments Made in the Shade*, 3 Fed. Cts. L. Rev. 177, 208-12 (2009) (describing, from the perspective of a former federal magistrate judge, the mountain of sealed electronic surveillance records present on federal courts' dockets across the United States).

that were only described in press reports); *Index Newspapers*, No. 17-mc-00145 (seeking to unseal non-warrant electronic surveillance applications and orders that were never entered on a public docket). These unsealing efforts required significant investment of *amici*'s resources and required knowledge of court sealing procedures.

Outside the context of law enforcement secrecy, *amici* are often the only parties with the experience and technical knowledge to pursue judicial transparency in specialized areas of civil litigation. For example, EFF has intervened in patent litigation where the parties have entirely sealed or overly redacted records to the point that they are incomprehensible. *See Uniloc v. Apple*, 508 F. Supp. 3d 550, 552 (N.D. Cal. 2020), *vacated on other grounds*, 25 F.4th 1018 (Fed. Cir. 2022) ("*Uniloc I*").[5] In that case, the court described with candor why secrecy was able to pervade a presumptively public patent dispute: "This order readily acknowledges that this Court . . . has at times fallen into the habit, as a concession to the shortness of life, of oversealing information that in truth should be made public." *Uniloc I*, 508 F. Supp. 3d at 554. The court went on: "But the culprits seem plain. Our adversarial system collapses when, as often occurs in these suits, *both parties seek* to seal more information than they have any right to and so do not police each other's indiscretion." *Id.*

---

[5] *See also Uniloc v. Apple*, EFF, https://www.eff.org/cases/uniloc-v-apple.

Neither the court (despite its best intentions) nor the parties had sufficiently safeguarded the public's presumptive rights of access in *Uniloc I*. EFF did, and the court acknowledged that EFF's intervention and unsealing motion was the catalyst for making public judicial records that should never have been sealed in the first place. The court subsequently unsealed even more records in the case and thanked EFF for intervening: "The real parties herein have jointly aligned themselves against the public interest and EFF has been of enormous help in keeping the system honest." *Uniloc USA, Inc. v. Apple, Inc.*, No 18-cv-00358, Slip Op. at 12-13 (N.D. Cal. Aug. 22, 2022) ("*Uniloc II*").[6]

*Amici*, like the Reporters Committee, are often the parties best positioned to assert the public's right of access. Indeed, sometimes they are the only parties with the ability to do so. The district court's denial of the Reporters Committee's standing in this case thus threatens to stop *amici* and other organizations at the courthouse doors and to sideline organizations with the resources and knowledge to ensure that the judiciary, the government, and other parties to litigation respect the public right to access judicial records.

---

[6] *Available at* https://www.eff.org/files/2022/09/26/2022-09-21_notice_dckt_268_1.pdf.

## C. Requiring Organizations to Plead a Specific Interest in Sealed Judicial Records Ignores the Purpose of the Presumption of Public Access

The district court erred in requiring the Reporters Committee to plead a "concrete plan" to review or otherwise use judicial records, R. Doc. 54, at 8-10, because inherent in the public's presumptive right of access to these records is the principle that judicial records are of interest to all. This presumption is particularly important given the informational asymmetry that exists whenever a party seeks to unseal judicial records: the party seeking access cannot fairly articulate a plan to use the records when the contents of the records are secret.

The presumption of public access assumes that documents reflecting the work of the judiciary are of interest to everyone. "Judicial records are public documents almost by definition, and the public is entitled to access by default." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). The law assumes the public is interested in these records because they reflect the operations of the judicial branch, and frequently—such as in the case of surveillance orders granted to law enforcement and intelligence agencies—the executive branch as well. "In our common-law tradition, the exercise of judicial power is an inherently *public* act."[7]

Public disclosure of judicial records is essential for ensuring the fairness and

---

[7] Smith, *Kudzu in the Courthouse*, 3 Fed. Cts. L. Rev. at 214.

Appellate Case: 22-3326    Page: 21    Date Filed: 02/07/2023 Entry ID: 5243332

integrity of the judicial process. As the Supreme Court recognized, "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc.*, 448 U.S. at 572. "Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification." *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000). Where judicial records reflect court authorization of executive conduct implicating people's constitutional rights, such as law enforcement surveillance, or other conduct that implicate people's constitutional rights, their secrecy only exacerbates these concerns. *See Gunn*, 855 F.2d at 573.

For this reason, when any person or organization seeks the public disclosure of sealed records, Article III does not require them to assert a plan for what they would do with the records. The law presumes that the records should be public, and that disclosure *by itself* will benefit the public because transparency enables oversight of and trust in the judicial process. A member of the public need not allege any more to have standing.[8]

---

[8] Some of the cases cited by the district court refute its holding that a litigant must have a "plan" for documents it seeks to have standing. In *Carlson v. United States*, 837 F.3d 753 (7th Cir. 2016), the fact that the plaintiff was an author and that the records were relevant to his book writing did not factor into the court's standing analysis. *See id.* at 758 ("Carlson's injury-in-fact is the denial of access to government documents that he has a right to seek"). The Fourth Circuit in *Doe*,

Appellate Case: 22-3326     Page: 22     Date Filed: 02/07/2023 Entry ID: 5243332

On top of the legal error of requiring the Reporters Committee to allege a plan for the records it seeks, the district court's decision creates a practical problem. Sealed materials are inaccessible to the public and thus their contents and sometimes even their basic character are unknown. Requiring parties seeking access to plead what their interests are in sealed records or how they are newsworthy puts organizations in the impossible position of having to guess at the value or contents of those materials. *See* AOB 13. Of course, underlying any request to unseal is the presumption that the public will be interested in the records. As *amici* explain below, once they have obtained those records, they disclose them as a matter of course to inform public debate. But *amici* and the Reporters Committee's use of judicial records after obtaining them has nothing to do with whether they had standing to seek access to the records in the first place. Should such as standard be imposed, it would effectively impede *amici*'s ability to seek access to sealed records, precisely because *amici* cannot speculate about their plans for using the documents when they lack basic information about their contents.

## II.  *AMICI*'S ABILITY TO SEEK ACCESS TO JUDICIAL RECORDS IS CENTRAL TO THEIR MISSIONS TO INFORM THE PUBLIC AND TO ENGAGE IN ADVOCACY ON IMPORTANT ISSUES

Accessing judicial records is instrumental to *amici*'s ability to perform their

---

749 F.3d at 264, similarly held that advocacy organizations have standing purely "[b]y seeking, and having been denied access to, documents they allege a right to inspect."

Appellate Case: 22-3326    Page: 23    Date Filed: 02/07/2023 Entry ID: 5243332

public interest missions. *Amici* share a belief in the fundamental value of governmental transparency—it is essential for the proper functioning of our democratic system. *Amici* also seek judicial and other public records to help them further their missions of safeguarding individuals' free expression, privacy, and other constitutional and statutory rights. Judicial records are often central to this mission because they reflect courts' authorization of law enforcement and intelligence agencies to engage in surveillance or other conduct that implicates people's rights. They also often relate to judicial decisions determining the legal rights of parties in disputes that implicate larger policy issues, such as whether the current patent system is promoting innovation.

Below are examples where *amici* have leveraged court records to inform public debate and to scrutinize government activities, all with an eye toward protecting civil liberties or promoting innovation. In that way, *amici* seek transparency for more than transparency's sake. The district court's decision threatens *amici*'s ability to ensure that the judiciary—and often the executive branch as well—is as transparent as possible and to advocate for people's rights.

A. **Access to Judicial Records Helps Shed Light on Controversial Government Surveillance and Informs Debate About the Legal Limits of Those Activities**

1. **The FBI's Use of Surveillance Software to Identify Otherwise Anonymous Internet Users**

In 2016, the ACLU sought to unseal docket sheets and search warrant

materials that documented the FBI's surreptitious and novel use of surveillance software to acquire identifying information from private computers in a manner that potentially implicated the privacy and anonymity rights of millions of innocent internet users. *See In re Sealed Docket Sheet Associated With Malware Warrant Issued on July 22, 2013*, No. 1:16-mc-00635 (D. Md. Aug. 29, 2016) (Dkt. No. 1).[9] Media outlets had reported that the FBI had obtained search warrants to deploy what the agency referred to as a "Network Investigative Technique" or "NIT," more commonly known as "malware," to collect private information about users, including identifying information such as an Internet Protocol ("IP") address.[10] *Id*. The terms "NIT" and "malware" refer to code delivered surreptitiously to a computer that enables data collection. Such code is used by hackers to steal passwords and other personal information.

The ACLU was concerned about the FBI was using malware to pierce the online anonymity and surveil the private communications of internet users. *Id*. Malware can be used to ascertain far more than a user's identity: "the software has the capacity to search the computer's hard drive, random access memory, and other

---

[9] *Available at* https://www.aclu.org/legal-document/aclu-motion-unseal-court-docket-sheet.

[10] An IP address is a string of numbers and letters that acts as a code to identify a computer network or a particular computer or device on a network. *IP Address*, Dictionary.com, http://www.dictionary.com/browse/ip-address.

Appellate Case: 22-3326     Page: 25     Date Filed: 02/07/2023 Entry ID: 5243332

storage media [and] to activate the computer's built-in camera." *In re Warrant to Search a Target Computer at Premises Unknown*, 958 F. Supp. 2d 753, 755 (S.D. Tex. 2013), *superseded by rule as recognized by United States v. Ganzer*, 922 F.3d 579, 588 (5th Cir. 2019) (order denying government application for warrant authorizing use of malware). The ACLU was also concerned that the FBI and the judiciary sought a single search warrant obtained in one jurisdiction to authorize the search of thousands of computers located around the world.[11]

Following the ACLU's motion, the government unsealed docket sheets and redacted versions of the search warrant materials, including the applications and affidavits filed in support of the FBI's request. The ACLU posted those materials on its website and the records provided information important to public advocacy. Specifically, the documents helped shape the larger public and legal debate about (1) whether the FBI had the authority to seek these potentially broad and invasive warrants and (2) whether the Federal Rules of Criminal Procedure could authorize the search of potentially thousands of people's computers with a single warrant.

The ACLU used these documents to contribute to that public debate in several ways. For example, the documents were discussed in a 2017 joint report authored by ACLU, EFF, and the National Association of Criminal Defense

---

[11] *See ACLU Comments on the Proposed Amendment to Rule 41 Concerning Remote Searches of Electronic Media* (April 4, 2014), https://www.aclu.org/other/aclu-comments-proposed-amendment-rule-41.

Lawyers ("NACDL") about the legal issues surrounding government hacking.[12]

The ACLU also discussed the records in *amicus curiae* briefs filed in support of

criminal defendants challenging these warrants. *U.S. v. Henderson*, No. 17-10230

(9th Cir. Oct. 31, 2017) (Dkt. No. 16);[13] *U.S. v. Tippens*, No. 17-30117 (9th Cir.

Oct. 20, 2017) (Dkt. No. 14).[14]

## 2. Obtaining Basic Information About State Law Enforcement's Extensive Use of Invasive Cell-Site Simulators

EFF sought to unseal search warrant materials filed by California law

enforcement officials after learning that they were frequently obtaining

authorization to use surveillance technology that sweeps up innocent people's

private data. Media outlets reported that between 2016 to 2018, San Bernardino

County law enforcement had obtained more than 700 warrants to search people's

digital data.[15] Many of those search warrants sought authorization to use cell-site

---

[12] EFF, ACLU, & NACDL, *Challenging Government Hacking In Criminal Cases* (March 2017), https://www.aclu.org/sites/default/files/field_document/malware_guide_3-30-17-v2.pdf.

[13] *Available at* https://www.aclu.org/legal-document/us-v-bryan-gilbert-henderson.

[14] *Available at* https://www.aclu.org/legal-document/us-v-david-tippens-amicus-brief.

[15] *See* Christopher Damien & Evan Wyloge, *In San Bernardino County, you're 20 times more likely to have your Facebook, iPhone secretly probed by police*, Palm Springs Desert Sun (July 23, 2018), https://www.desertsun.com/story/news/2018/07/23/san-bernardino-countys-electronic-records-probed-most-california/820052002/.

Appellate Case: 22-3326    Page: 27    Date Filed: 02/07/2023 Entry ID: 5243332

simulators, devices that mimic cell towers and connect with every phone near them. *See EFF*, 83 Cal.App.5th at 414. The tools are capable of capturing details of both criminal suspects and innocent people who happen to be nearby. *Id*.

After EFF petitioned to unseal eight search warrant filings (the applications, affidavits, warrants, and returns), officials agreed to unseal one warrant file in its entirety. Officials also unsealed the applications, warrants, and returns (but not the affidavits) of the seven other warrant filings. *Id*. at 415-16. EFF published the search warrant files on its website[16] and has used them to advocate for greater privacy protections and transparency when law enforcement uses cell-site simulators.[17] This advocacy includes efforts to strengthen existing California laws that protect people's digital privacy, such as the California Electronic Communications Privacy Act and another law, SB 741, that requires local governments to have privacy and use policies before purchasing cell-site simulators.[18]

---

[16] *Available at* https://www.eff.org/document/eff-v-san-bernardino-county-unsealed-search-warrant-packet.

[17] *See* Aaron Mackey & Dave Maass, *EFF Continues Legal Fight to Release Records Showing How Law Enforcement Uses Cell-Site Simulators*, EFF Deeplinks (Dec. 17, 2021), https://www.eff.org/deeplinks/2021/12/eff-continues-legal-fight-release-records-showing-how-law-enforcement-uses-cell.

[18] *See id*.; Matthew Guariglia, *Judge Upends Vallejo's Use of a Stingray*, EFF Deeplinks (Oct. 2, 2020), https://www.eff.org/deeplinks/2020/10/judge-upends-vallejos-use-stingray.

### 3.     Exposing How The Government Conceals The Use of Controversial Foreign-Intelligence Surveillance in Ordinary Criminal Prosecutions

The ACLU has worked to shed light on how the government uses the fruits of controversial foreign-intelligence surveillance in ordinary criminal prosecutions, and how it routinely seeks to withhold information about that surveillance from defendants. In *United States v. Osseily*, the ACLU relied on the public's right of access to ensure access to briefs addressing whether and when the government may conceal its use of surveillance under the Foreign Intelligence Surveillance Act ("FISA") in domestic criminal prosecutions. *See* No. 8:19-cr-00117, Slip Op. at 1-2 (Dkt. No. 148) (C.D. Cal. July 8, 2020).[19] There, the government belatedly tried to seal two filings that it had already provided to the defendant without restriction—and that the defendant, in turn, had already shared with the ACLU. *See id.* Shortly after the government shared the unclassified filings with the defendant, the government changed course, filing a motion to seal the materials and to prevent the ACLU from disseminating them further. *See id.* The ACLU objected, asserting the public's presumptive right to access the records, and the court denied the government's sealing motion. *Id.* at 3-5.

---

[19] *Available at* https://storage.courtlistener.com/recap/gov.uscourts.cacd.751615/gov.uscourts.cacd.751615.148.0_1.pdf.

The filings contained the government's arguments about when it is required to provide notice to criminal defendants concerning its use of FISA surveillance evidence—including an argument that it need not provide notice where a defendant would not prevail on a motion to suppress the evidence. *See* Gov't CIPA Motion & CIPA Suppl. Brief (Dkt No. 150-2), *United States v. Osseily* (July 8, 2020) (public versions of motion and brief originally filed *ex parte*).[20] The ACLU fought to ensure that the records remained public because the filings showed how the government has misused the Classified Information Procedures Act to litigate suppression issues in secret, in violation of defendants' constitutional rights. *See Alderman v. United States*, 394 U.S. 165, 181-82 (1968) (holding that litigation over whether the government's evidence is "fruit of the poisonous tree" must be adversarial, not *ex parte*).

The government argued that, if the filings were made public, the defendant would use the information to criticize the prosecution and the government's conduct in national security cases more generally. *See Osseily*, Slip Op. at 5. The court rejected these arguments, observing that because the government "[had] adopted policies that affect citizens, the Government is in a position to defend and justify them." *Id*. The *Osseily* filings continue to help shape the larger public

---

[20] *Available at* https://www.aclu.org/legal-document/united-states-v-osseily-govt-cipa-motion-cipa-supplemental-brief.

Appellate Case: 22-3326    Page: 30    Date Filed: 02/07/2023 Entry ID: 5243332

debate about whether, and under what circumstances, the government should be able to use evidence obtained through foreign-intelligence surveillance in ordinary criminal prosecutions. This practice is controversial in part because of the different purposes, legal standards, and surveillance powers the government enjoys in the arena of national security.[21] This debate continues as a federal law authorizing warrantless foreign-intelligence surveillance programs expires at the end of this year.[22]

4.      **Making Public Basic Details Regarding Law Enforcement's Use of Non-Warrant Legal Process to Obtain People's Private Information**

EFF served as counsel to a news organization that sought to obtain basic details about the federal government's use of subpoenas and court orders to obtain people's private data. *See Index Newspapers*, No. 17-mc-00145. At the time of filing the motion to unseal, the U.S. District Court for the Western District of Washington had docketed the applications, orders, and related materials in a way

---

[21] *See* Ashley Gorski & Patrick Toomey, *The Government is Using its Foreign Intelligence Spying Powers for Routine Domestic Investigations*, ACLU (Feb. 5, 2020) ("FISA gives the government an extraordinary powerful surveillance tool. . . . Disturbingly, the government is increasingly using these broad and intrusive spying powers in run-of-the-mill criminal investigations against Americans, circumventing their Fourth Amendment rights.").

[22] *See* Sam Sabin, *A major government surveillance power faces big questions in 2023*, Axios (Jan. 17, 2023), https://www.axios.com/2023/01/17/fisa-government-surveillance-cia-fbi-section-702.

Appellate Case: 22-3326    Page: 31    Date Filed: 02/07/2023 Entry ID: 5243332

that prevented the public from even knowing basic details, such as how many requests law enforcement sought over time.

As a result of the unsealing petition, the district court changed how it docketed surveillance applications and orders and began issuing semi-annual reports that disclosed the dockets and other basic details about law enforcement's requests.[23] Notably, the Reporter's Committee has a similar goal in this case. *See* R. Doc. 35, at 1. Public disclosure about such surveillance activities is crucial to helping safeguard individuals' constitutional rights because the public can challenge the activities or advocate for new legal protections.

However, when government surveillance is shrouded in secrecy, it frustrates the public's ability to take such steps. For example, there is often a long delay between the initial order granting government access to private data and the public disclosure and appellate scrutiny (if any) of law enforcement's activities. *See Carpenter*, 138 S. Ct. at 2221 (holding in 2018 that law enforcement's use of an

---

[23] *See Pilot Program re Applications and Orders for Pen Registers and Trap and Trace Devices and re 2703(d)*, United States District Court, Western District of Washington, https://www.wawd.uscourts.gov/pilot-program-re-applications-and-orders-pen-registers-and-trap-and-trace-devices-and-re-2703d; Aaron Mackey, *Court Report Provides New Details About How Federal Law Enforcement in Seattle Obtain Private Information Without Warrants*, EFF Deeplinks (Feb. 24, 2020) ("Federal law enforcement in Seattle sought an average of one court order a day to disclose people's sensitive information such as calling history in the first half of 2019"), https://www.eff.org/deeplinks/2020/02/court-report-provides-new-details-about-how-federal-law-enforcement-seattle-obtain.

Appellate Case: 22-3326     Page: 32     Date Filed: 02/07/2023 Entry ID: 5243332

order under 18 U.S.C. § 2703(d) in 2011 to collect historic cell-site location information was unconstitutional). The delay in securing appellate review of the government's novel and controversial legal theories is further blunted by sealing, as it means that a "huge segment of the federal docket is not subjected to the discipline of appellate review routinely applied to the rest of that docket."[24] Thus the *Index Newspapers* unsealing helps the broader public identify potentially controversial surveillance sooner and promotes public debate of the activities reflected in the judicial records, particularly when appellate review may not be available.

### B. Access to Civil Litigation Records Has Helped Inform Public Debate About the Patent System and Innovation

#### 1. Court Records Describe Effort by Non-Practicing Entity to Obtain Payments Via Patent Licenses Rather Than Use The Patents

EFF spent nearly four years seeking to unseal records filed in a patent dispute that was one of hundreds of suits filed by the plaintiff against many different companies.[25] The underlying sealed documents concerned the plaintiff's financial dealings with another entity that owned the patents.[26] Apple had argued

---

[24] Stephen Wm. Smith, *Gagged, Sealed & Delivered: Reforming ECPA's Secret Docket*, 6 Harv. L. & Pol'y Rev. 313, 315 (2012).

[25] *See Uniloc v. Apple*, EFF, https://www.eff.org/cases/uniloc-v-apple.

[26] *See* Aaron Mackey, *Victory! Court Unseals Records Showing Patent Troll's Shakedown Efforts*, EFF Deeplinks (Sept. 30, 2022) ("*Shakedown Efforts*"),

Appellate Case: 22-3326     Page: 33     Date Filed: 02/07/2023 Entry ID: 5243332

that Uniloc lacked standing to assert the patents because it had failed to comply with the monetization requirements of the contract it signed with the entity that owned the patents. *See Uniloc I*, 508 F. Supp. 3d at 552. In support of that argument, Apple introduced evidence showing how much money Uniloc obtained by threatening companies with patent infringement suits and then obtaining licenses to settle its claims, sometimes for as little as $2,500.[27]

When the parties initially filed their briefs and evidence regarding Uniloc's standing, the papers were nearly entirely redacted, to the point that the parties' legal arguments were difficult to understand. EFF's intervention resulted in greater transparency of the legal arguments and the factual evidence that the parties relied on. *See Uniloc II* at 12-13. In particular, the records reflected a concerning practice by some patent litigants: threatening to start expensive patent litigation with the primary goal of extracting settlements, rather than vindicating a patent infringement claim.[28] According to the Federal Trade Commission, these activities raise "policy questions" about the role the patent-asserting parties play "in

---

https://www.eff.org/deeplinks/2022/09/victory-court-unseals-records-showing-patent-trolls-shakedown-efforts.

[27] *See Shakedown Efforts*, *supra* n.26.

[28] *See Patent Assertion Entity Activity: An FTC Study*, Federal Trade Commission (Oct. 2016), https://www.ftc.gov/system/files/documents/reports/patent-assertion-entity-activity-ftc-study/p131203_patent_assertion_entity_activity_an_ftc_study_0.pdf.

Appellate Case: 22-3326     Page: 34     Date Filed: 02/07/2023 Entry ID: 5243332

promoting innovation and economic growth."[29] EFF's unsealing thus helped make

public new evidence that reflected this controversial activity by entities that assert

patent rights without actually using the underlying patents.[30]

### 2. Intervening to Ensure That Judicial Opinions Settling Patent Disputes Are Publicly Accessible

EFF intervened in another patent dispute in 2016 that featured many sealed

filings and a sealed summary judgment order, making difficult for the public to

know basic details about the dispute. *See Blue Spike, LLC v. Audible Magic Corp.*,

2016 WL 9275966, *3 (E.D. Tex. May 17, 2016). EFF argued that even if the

sealed materials contained specific information that constituted a trade secret or

that could otherwise be sealed, those interests did not permit shrouding entire court

records in secrecy. *Id*. The court agreed and ordered the parties to submit redacted

versions of their filings and the court's orders on the public docket. *Id*. at *5.

The court also recognized EFF's purpose in seeking access to the materials,

noting that "EFF is a public interest organization, actively involved in the patent

reform debate" that "relies on publicly available documents, including court

filings, to inform the public about the debate and to report on abusive patent

litigation tactics." *Id*. at *4. This is precisely what EFF did once the documents

---

[29] *Id*. at 1.

[30] *See Shakedown Efforts*, *supra* n.26.

Appellate Case: 22-3326    Page: 35    Date Filed: 02/07/2023 Entry ID: 5243332

were public: it used them to explain the problems of secrecy in patent litigation and why secrecy frustrated the public's ability to debate whether the patent system was promoting innovation.[31] As EFF wrote then, greater transparency in patent litigation is "good for the patent system, and good for the public" because it allows everyone to see the reality of patent litigation and how it is often divorced from the purposes underlying the law's protections for patents.[32]

## CONCLUSION

*Amici* respectfully request that the Court reverse and confirm that the Reporters Committee has standing to seek to unseal the court records it seeks.

Dated: February 2, 2023

By:  /s/ Sophia Cope
Sophia Cope
Aaron Mackey
ELECTRONIC FRONTIER
FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Fax: (415) 436-9993
Email: sophia@eff.org

Scarlet Kim
Brett Max Kaufman
Jennifer Granick
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor

---

[31] *See* Vera Ranieri, *A Bit More Transparency in Patent Lawsuits*, EFF Deeplinks (Nov. 2, 2016), https://www.eff.org/deeplinks/2016/11/bit-more-transparency-patent-lawsuits.

[32] *Id.*

Appellate Case: 22-3326     Page: 36     Date Filed: 02/07/2023 Entry ID: 5243332

New York, NY 10004
Telephone: (212) 549-2500
Email: scarletk@aclu.org

*Counsel for Amici Curiae*

29

**CERTIFICATE OF COMPLIANCE WITH RULE 32**

Pursuant to Fed. R. App. P. 32(g), I certify as follows:

1.     This Brief of *Amici Curiae* Electronic Frontier Foundation and American Civil Liberties Union in support of Petitioner-Appellant complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,397 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365, the word processing system used to prepare the brief, in 14 point Times New Roman font.

Dated: February 2, 2023                          /s/ Sophia Cope
                                                                 Sophia Cope

                                                                 *Counsel of Record for Amici Curiae*

# CERTIFICATE OF COMPLIANCE WITH EIGHTH CIRCUIT RULE 28A(H)

Pursuant to this Court's Rule 28A(h), I hereby certify that the electronic version of this Brief of *Amici Curiae* Electronic Frontier Foundation and American Civil Liberties Union in Support of Petitioner-Appellant has been scanned for viruses and is virus-free.

Dated: February 2, 2023

/s/ Sophia Cope
Sophia Cope

*Counsel of Record for Amici Curiae*

Appellate Case: 22-3326   Page: 39   Date Filed: 02/07/2023 Entry ID: 5243332

# CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system, pursuant to Eighth Circuit Rule 25A.

Dated: February 2, 2023

/s/ Sophia Cope
Sophia Cope

*Counsel of Record for Amici Curiae*