# In the United States Court of Appeals
# For the Eighth Circuit

REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS,

APPELLANT,

V.

UNITED STATES OF AMERICA,

APPELLEE.

*Appeal from the
United States District Court for the
District of Minnesota*

**BRIEF OF APPELLEE**

ANDREW M. LUGER
*United States Attorney*

DAVID W. FULLER
*Assistant U.S. Attorney*

*United States Attorney's Office
District of Minnesota
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5600*

Attorneys for Appellee

# SUMMARY OF THE CASE

Applicant-appellant Reporters Committee for Freedom of the Press filed an initial application contending the District of Minnesota's sealing practices with respect to certain investigative applications, warrants, and orders violated the public's right of access to judicial proceedings. The district court added the United States as respondent, observed that district practices already mostly conformed to what the Committee sought, dismissed the application without prejudice, and advised the parties to confer with the clerk of court concerning what additional changes to sealing practices may be agreeable and feasible. During these negotiations, the government agreed to most of the changes the Committee requested.

The Committee then filed an amended application seeking to change different sealing rules and practices within the district. The district court correctly concluded it lacked jurisdiction because, having alleged only an abstract, general injury shared with all members of the public, the Committee did not have standing to pursue broad-based relief. The district court properly dismissed the case.

The government does not believe oral argument is necessary.

i

# TABLE OF CONTENTS

SUMMARY OF THE CASE.................................................................i

TABLE OF AUTHORITIES ...........................................................iv

JURISDICTIONAL STATEMENT .....................................................1

STATEMENT OF THE ISSUES ........................................................2

STATEMENT OF THE CASE ............................................................3

I.      Background .........................................................................3

II.     Procedural History..............................................................6

        A.      The Parties' Positions ..............................................6
        B.      The District Court's Order .............................11

SUMMARY OF THE ARGUMENT.................................................16

ARGUMENT ..................................................................................17

I.      Standard of Review..........................................................17

II.     Applicable law..................................................................17

III.    The district court correctly concluded the Committee
        lacked standing to seek wholesale changes to the district's
        sealing and docketing practices.................................20

        A.      Evidence supporting the elements of standing was
                required because the Committee sought final
                judgment. ..................................................21
        B.      The Committee's allegations failed to show standing.
                ..................................................................24
                1.      The Committee's interest is neither concrete
                        nor particularized...................................24
                2.      The Committee is not similarly situated to
                        potential litigants who actually suffer injury-in-
                        fact from lack of access. ..........................27

Appellate Case: 22-3326    Page: 3    Date Filed: 04/21/2023 Entry ID: 5267989

CONCLUSION..................................................................30

CERTIFICATE OF COMPLIANCE ...................................31

Appellate Case: 22-3326    Page: 4    Date Filed: 04/21/2023 Entry ID: 5267989

# TABLE OF AUTHORITIES

Cases

*ABF Freight Sys., Inc. v. Int'l Bhd. Of Teamsters*,
    645 F.3d 954 (8th Cir. 2011) ........................................................... 16

*Allen v. Wright*,
    468 U.S. 737 (1984) .................................................................. 18, 25

*Bassett v. Credit Bureau Servs., Inc.*,
    60 F.4th 1132 (8th Cir. 2023)............................................... 2, 17, 18

*Carney v. Adams*,
    141 S. Ct. 493 (2020) ................................................................... 29

*Carpenter v. United States*,
    138 S. Ct. 2206 (2018) ................................................................. 26

*Forbes Media LLC v. United States*,
    2021 WL 2935906 (N.D. Cal. July 13, 2021) ................................. 26

*In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*,
    964 F.3d 1121 (D.C. Cir. 2020)....................................................... 9

*In re Nat'l Sec. Letter*,
    863 F.3d 1110 (9th Cir. 2017) ...................................................... 26

*In re Search Warrant for Secretarial Area Outside Office of Gunn*,
    855 F.2d 569 (8th Cir. 1988) .............................................. 9, 10, 26

*Iowa League of Cities v. EPA*,
    711 F.3d 844 (8th Cir. 2013) ........................................................ 21

iv

*Lance v. Coffman,*
   549 U.S. 437 (2007) ....................................................................... 25

*Lexmark Int'l v. Static Control Components,*
   572 U.S. 118 (2014) ....................................................................... 18

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ............................................................... passim

*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990) ................................................................. 24, 25

*Microsoft Corp. v. U.S. Dept. of Justice,*
   233 F. Supp. 3d 887 (W.D. Wa. 2017) ........................................... 27

*Nixon v. Warner Communications, Inc.,*
   435 U.S. 589 (1978) ......................................................................... 8

*Nor-W. Cable Commc'ns P'ship v. City of St. Paul,*
   924 F.2d 741 (8th Cir. 1991) ................................................... 16, 22

*O'Shea v. Littleton,*
   414 U.S. 488 (1974) ....................................................................... 18

*Owner-Operator Indep. Drivers Assoc. v. United States Dep't of Transp.,*
   878 F.3d 1099 (8th Cir. 2018) ................................................ passim

*Press-Enterprise Co. v. Superior Court of California for Riverside County,*
   478 U.S. 1 (1986) ............................................................................. 8

*Red River Freethinkers v. City of Fargo,*
   679 F.3d 1015 (8th Cir. 2012) ....................................................... 19

*Schlesinger v. Reservists Comm. to Stop the War,*
   418 U.S. 208 (1974) ......................................................... 17, 18, 25

v

Appellate Case: 22-3326    Page: 6    Date Filed: 04/21/2023   Entry ID: 5267989

*Schumacher v. SC Data Center, Inc.*,
    33 F.4th 504 (8th Cir. 2022) ............................................... 18, 19, 26

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................ 2, 16, 17

*State v. Biden*,
    52 F.4th 362 (8th Cir. 2022) .................................................... 24

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ................................................................... 19

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ................................................................. 18

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ............................................................. 19

*United States v. Appelbaum*,
    707 F.3d 283 (4th Cir. 2013) ................................................. 9, 26

*United States v. Wheelock*,
    772 F.3d 825 (8th Cir. 2014) .................................................... 26

*Valley Forge Christian Coll. v. Ams. United for Separation of Church
    & State, Inc.*,
    454 U.S. 464 (1982) ................................................................. 18

*Webster Groves School Dist. v. Pulitzer Pub. Co.*,
    898 F.2d 1371 (8th Cir. 1990) .................................................. 10

## Statutes

18 U.S.C. § 2701............................................................................3

18 U.S.C. § 2703(c)(2) ..................................................................5

Appellate Case: 22-3326    Page: 7    Date Filed: 04/21/2023 Entry ID: 5267989

18 U.S.C. § 2703(d) ................................................................5

18 U.S.C. § 3123(d)(1) .................................................... passim

18 U.S.C. § 3127(3) ................................................................5

18 U.S.C. §§ 3121-3127 .........................................................5

28 U.S.C. § 1291 ....................................................................1

28 U.S.C. § 1331 ....................................................................1

Pub. L. No. 99-508 .............................................................3, 5

Rules

Federal Rule of Criminal Procedure 41 ............................5, 7

Appellate Case: 22-3326     Page: 8     Date Filed: 04/21/2023 Entry ID: 5267989

# JURISDICTIONAL STATEMENT

This appeal is from the dismissal on jurisdictional grounds of an amended application for relief filed in the United States District Court for the District of Minnesota. The district court entered its order on October 11, 2022, and entered judgment on October 12, 2022. The district court correctly concluded it lacked jurisdiction because the applicant did not have standing to bring its claims pursuant to Article III of the U.S. Constitution. The district court had jurisdiction pursuant to 28 U.S.C. § 1331 to determine its own jurisdiction.

The applicant timely appealed on November 4, 2022. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

1

# STATEMENT OF THE ISSUES

I.  Did the district court err in concluding the Committee lacked standing to pursue district-wide changes to sealing and docketing practices with respect to certain investigative applications, warrants, and orders?

Most apposite authorities:

> *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)
>
> *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)
>
> *Bassett v. Credit Bureau Servs., Inc.*, 60 F.4th 1132 (8th Cir. 2023)
>
> *Owner-Operator Indep. Drivers Assoc. v. United States Dep't of Transp.*, 878 F.3d 1099 (8th Cir. 2018) (*"OOIDA"*)

Appellate Case: 22-3326    Page: 10    Date Filed: 04/21/2023 Entry ID: 5267989

## STATEMENT OF THE CASE

### I.  Background

The Reporters Committee for Freedom of the Press (referred to in this Brief as the Committee) initiated this action in December 2020, by filing an application to unseal all Stored Communication Act[1] warrant applications, supporting materials, related court orders and docket sheets dating back to January 1, 2018.  JA-6 ¶ 1; R. No. 1 ¶1. Prior to filing its application, the Committee had never sought nor been denied access to any particular materials in the District of Minnesota.

At a status hearing, the district court informed the Committee that, in fact, most of the relief it sought was already reflected in the District of Minnesota's practices, so the court denied the application without prejudice and advised the Committee to confer with the U.S. Attorney's Office and the clerk of court to determine to what further

---

[1]  The Stored Communications Act, which is Title II of the Electronic Communication Privacy Act of 1986 (ECPA), governs law enforcement's access to stored communications and transaction records from third-party electronic communications services and remote computing services.  Pub. L. No. 99-508, 100 Stat. 1848, 1860 (1986) (codified at 18 U.S.C. § 2701 *et seq.*).

Appellate Case: 22-3326    Page: 11    Date Filed: 04/21/2023 Entry ID: 5267989

relief the parties could agree.  JA-18-21; R. No. 26 at 7-10. ("I would like to deny your pending application without prejudice just because it's basically aimed at a bunch of stuff that doesn't exist.").

Over the next year, the parties and the clerk's office conferred on multiple occasions and were able to reach agreement on a number of items that have since been implemented by the clerk's office.  These modifications reflected a significant change to docketing practices and tracking capabilities in the District of Minnesota, resulting in increased transparency.  These agreed-upon changes included adding "flags" to dockets involving search warrants and other types of court orders to delineate the authority under which each warrant or order is sought and placing a notice on the court's website to inform the public that when warrants and other orders are unsealed, they are available for viewing in person at the clerk's office.  JA-28-29; R. No. 30.

Going forward, the merits of the litigation reflected two limited areas on which the Committee and the U.S. Attorney's Office failed to reach an agreement.  Notably, the issues that eventually came before the district court were almost entirely absent from the Committee's

4

initial application. Rather than addressing Stored Communications Act warrants, the Committee's focus shifted to seeking presumptive unsealing of certain orders issued under the Pen Register Act[2] and § 2703(d) of the Stored Communications Act (which are different from Stored Communications Act warrants arising under §§ 2703(a)-(c))[3] and seeking docketing of denied or amended search warrants.

---

[2]  The Electronic Communications Privacy Act was passed in 1986 to balance "the privacy expectations of American citizens and the legitimate needs of law enforcement agencies." H.R. Rep. No. 99-647, at 19; S. Rep. No. 99-541, at 5. As pertinent, it created the Stored Communications Act and the Pen Register Act.

The Pen Register Act, which is Title III of the Electronic Communications Privacy Act, governs pen register and trap and trace devices, or PR/TTs. Pub. L. No. 99-508, 100 Stat. 1848, 1873 (1986) (codified at 18 U.S.C. §§ 3121-3127). A pen register records outgoing numbers dialed by a target phone; a trap and trace captures the numbers of incoming calls made to a target phone. *See* 18 U.S.C. § 3127(3) & (4). Orders obtained pursuant to the Pen Register Act do not permit the government to obtain the content of any communications.

[3]  Section 2703(d) authorizes government access to *non-content* subscriber records and information from third-party electronic communications services and remote computing services and requires a court order. *See* 18 U.S.C. § 2703(d). By contrast, § 2703(a) & (b) require a search warrant under Federal Rule of Criminal Procedure 41 and authorize the government to obtain the *contents* of wire or electronic communications (such as emails, social media postings, and the contents of cloud-based storage accounts); § 2703(c)(2) authorizes the government to subpoena certain other subscriber records such as

Appellate Case: 22-3326     Page: 13     Date Filed: 04/21/2023 Entry ID: 5267989

## II. Procedural History

### A. The Parties' Positions

In its initial application, the Committee principally sought a retrospective order directing the clerk of court to unseal Stored Communications Act warrants, orders, and related materials from inactive investigations dating back to January 1, 2018, as well as associated docket sheets. JA-6; R. No. 1. The Committee's initial application also sought a prospective order modifying district sealing practices with respect to Stored Communications Act warrant materials. JA-6-7; R. No. 1. In support, the Committee invoked the public's right of access to judicial materials under both the First Amendment and the common law. JA-8; R. No. 1 at 3. (referencing supporting memorandum).

At a status conference regarding the Committee's initial application, the district court informed the Committee that its requests were already largely reflected in the District of Minnesota's practices. JA-18; R. No. 26 at 7. ("I mean, we already do a ton of what's

---

the subscriber's name, address, length of service, and phone number. 18 U.S.C. § 2703(c)(2).

6

already being asked for in the motion. A lot of the relief that's being sought in this case, it's already there. There is no reason to grant it because we already do it."); JA-21; R. No. 6 at 10. ("I would like to deny your pending application without prejudice just because it's basically aimed at a bunch of stuff that doesn't exist"); *see also* JA-131; R. No. 54 at 10. ("Nothing more clearly demonstrates the abstract nature of the Committee's interest than the fact that it did not realize that this District already followed most of the practices that it requested in its original application."). The district court directed the Committee to confer with the U.S. Attorney's Office and predicted that the Committee and the U.S. Attorney's Office would be able to reach agreement about most of the remaining issues. JA-22; R. No. 26 at 11. ("[O]ur U.S. Attorney's Office is a pretty sunshiny office. I mean, they're pretty good about disclosing stuff in my experience.").

Following those negotiations and after jointly conferring with the clerk's office, the U.S. Attorney's Office agreed to changes the Committee requested even though the changes went beyond what the Committee initially sought in its application. Specifically, the parties agreed that the clerk's office would add "flags" to dockets involving

search warrants and other types of orders to allow the public to identify warrants issued pursuant to Federal Rule of Criminal Procedure 41, warrants issued pursuant to the Stored Communications Act, § 2703(d) orders, PR/TTs, and other types of orders. JA-28-29; R. No. 30. In addition, the parties agreed that the clerk's office would place a notice on the district court's website to inform the public that when warrants and other orders are unsealed, they are available for viewing in person at the clerk's office. JA-29; R. No. 30 at 2.

Following the negotiations, only two issues remained in dispute. As a result, the Committee filed an amended application, in which it raised issues different from those it had raised in its initial application. In its amended application, the Committee no longer emphasized retrospective relief and did not focus on Stored Communications Act warrants; rather, the Committee sought prospective relief relating to orders for non-content subscriber records (that is, § 2703(d) orders) and information under the Pen Register Act, which would require changing the District's default rule keeping such orders under seal. JA-62-63; R. No. 35.

Appellate Case: 22-3326     Page: 16     Date Filed: 04/21/2023 Entry ID: 5267989

As with its initial application, the Committee submitted a supporting memorandum explaining its positions and extensively discussing principles set forth in *Press-Enterprise Co. v. Superior Court of California for Riverside County*, 478 U.S. 1 (1986); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978); *In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, 964 F.3d 1121 (D.C. Cir. 2020); and *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988) ("*In re Gunn*"). *See* JA-64; R. No. 35 at 3. (citing cases and referencing supporting memorandum). Among other points, the Committee argued § 2703(d) orders are akin to traditional search warrants, to which this Court found a right of access could apply in *In re Gunn*, 855 F.2d at 574. But, again, the Committee had not requested nor been denied access to any specific materials.

The government submitted a response. The government first argued the Committee lacked standing to bring its claims because its generalized interests were not concrete or particularized enough to demonstrate an injury-in-fact within the meaning of Article III. On the merits, among other points, the government argued § 2703(d)

9

orders are more akin to grand jury subpoenas, to which no tradition of access exists, as the Fourth Circuit held in *United States v. Appelbaum*, 707 F.3d 283, 291-92 n.9 (4th Cir. 2013). The government also noted this Court in *In re Gunn* concluded the warrant in that case should remain under seal and never found any right of access under the First Amendment. *See In re Gunn,* 855 F.2d at 575-76 (concurring opinion); *Webster Groves School Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1377 n.9 (8th Cir. 1990) (indicating *In re Gunn*'s "holding . . . was limited to that case").

In addition, the government pointed out that contrary to the Committee's proposed rule requiring that PR/TT materials be unsealed after 180 days absent a showing by the government, the Pen Register Act requires that orders authorizing the installation of PR/TTs be sealed "until otherwise ordered by the court." 18 U.S.C. § 3123(d)(1). Similarly, the government argued that Local Rules for the District of Minnesota provide that applications and orders for PR/TTs and § 2703(d) orders be sealed. D. Minn. Local R. 49-1(c)(1)(B)(ii) and (iii). The government opposed blanket unsealing in these limited areas—for § 2703(d) orders, PR/TTs, and search

Appellate Case: 22-3326    Page: 18    Date Filed: 04/21/2023 Entry ID: 5267989

warrants that were not issued—and explained that its position was not an effort to thwart public access, but rather to promote the legitimate interests of maintaining secrecy in ongoing investigations and to prevent reputational harm to innocent persons who would not be in a position to protect their own interests.

### B. The District Court's Order

Following a hearing, the district court denied the Committee's amended application and dismissed the matter for want of jurisdiction based on a lack of standing. Because the Committee had asked the court to enter final judgment in its favor, the court concluded the Committee should have offered "evidence to support each element of standing." JA-126; R. No. 54 at 5. But the Committee had "not offered evidence of any kind in support of either of its applications," *id.*, and the court found the Committee's "allegations would be insufficient" even if "'mere allegations' would suffice at this stage." JA-126-27; R. No. 54 at 5-6.

As the district court observed, the "only interest" asserted by the Committee "is an interest in observing and understanding the work of federal trial courts – an interest the Committee itself describes as

11

being shared with 'all members of the public and the press.'" JA-127; R. No. 54 at 6. While the court "commend[ed] the Committee for seeking to protect the public interest in access to judicial records," JA-132; R. No. 54 at 11., it concluded "[s]uch an interest is exactly the kind of generalized, abstract interest in the proper application of law that the Supreme Court has repeatedly held does *not* suffice to establish injury-in-fact." JA-128; R. No. 54 at 7.

The district court acknowledged "that a litigant who is denied access to materials to which he or she claims a legal right suffers an Article III injury." JA-128; R. No. 54 at 7. In this case, however, there was simply "no petitioner who is trying to gain access on his or her own behalf to the materials that the Committee seeks to unseal." JA-130; R. No. 54 at 9. In other words, according to the district court, "the Committee wants to unseal these materials in case some unspecified person may some day want to review them," *id.*, an interest the court called "patently insufficient to establish standing." JA-131; R. No. 54 at 10. Indeed, the district court noted, "[n]othing more clearly demonstrates the abstract nature of the Committee's interest than the

12

fact that it did not realize that this District already followed most of the practices that it requested in its original application." *Id.*

Finally, the district court observed the Committee had not argued it had associational standing and also concluded such an argument "could not succeed" in any event because the Committee "has not identified any member who would have standing to bring this lawsuit in his or her own right – a necessary element of associational standing." JA-131; R. No. 54 at 10. Accordingly, the court dismissed the matter.

The Committee then filed a letter seeking permission to file a motion to reconsider. JA-135-37; R. No. 56. The court denied the request, finding the Committee had failed to show "compelling circumstances to obtain such permission," as required by the local rules. JA-138-41; R. No. 57. According to the district court, in its ruling it "did *not* hold that the Committee must show that it intends to do anything with the records that it asks to unseal," and the court did not "fault the Committee for seeking to vindicate rights that it shares with every member of the public." JA-139; R. No. 57 at 2.

Appellate Case: 22-3326   Page: 21   Date Filed: 04/21/2023 Entry ID: 5267989

Rather, the court explained, its order "held that, so far as the allegations in the Committee's original and amended applications show, it was not actually seeking access to any records." *Id.* "Instead," the Committee "was simply seeking, on behalf of the general public, to change this District's sealing and docketing practices to conform to what the law (allegedly) requires." *Id.* In short, "the Committee did not allege that it sought, or was seeking, any records." *Id.*

The district court also addressed and rejected the Committee's argument that the court supposedly "erred in treating the Amended Application as a motion for summary judgment without giving the Reporters Committee notice and an opportunity to proffer evidence." JA-136; R. No. 56 at 2. The court called this argument "puzzling," noting "it was the Committee itself who was seeking judgment in its favor." JA-139; R. No. 57 at 2. Moreover, the court noted, it did not in fact treat the Committee's amended application as a motion for summary judgment, but rather "explained that, if the Committee's application should be considered as such, the Committee had failed to meet the standard for judgment in its favor." JA-139-40; R. No. 57 at 2-3.

14

The district court, however, pointed out it had also "explain[ed] that, even if the standing issue should be analyzed based solely on the allegations in the amended application, the Committee had failed to establish standing." JA-140; R. No. 57 at 3. The Committee also could not "complain that it did not get notice of the standing issue, as the government raised that issue in its brief." *Id.* n.1.

The Committee then filed this appeal and submitted its opening brief. Two amici have submitted briefs on behalf of the Committee.

Appellate Case: 22-3326    Page: 23    Date Filed: 04/21/2023 Entry ID: 5267989

## SUMMARY OF THE ARGUMENT

The district court did not err in applying the well-settled requirements of Article III standing to the matter at hand. A claimant bears the burden of demonstrating standing with the manner and degree of evidence required at the successive stages of litigation, and here the Committee had requested entry of judgment in its favor. Hence, mere allegations would not suffice. Yet, the Committee offered no evidence of any sort in support of its standing to pursue wholesale changes to District of Minnesota sealing and docketing practices.

Further, as the district court correctly held, the Committee would lack standing even if mere allegations could theoretically suffice. The Committee's asserted interest in observing and understanding the work of federal trial courts, which it described as being shared with all members of the public and the press, is exactly the sort of abstract, generalized interest the Supreme Court and this Court have repeatedly found insufficient to establish injury-in-fact.

Accordingly, the district court properly dismissed the amended application for lack of subject-matter jurisdiction.

Appellate Case: 22-3326    Page: 24    Date Filed: 04/21/2023 Entry ID: 5267989

# ARGUMENT

## I. Standard of Review

This appeal relates to standing, the only issue the district court addressed. "The existence of subject-matter jurisdiction is a question of law that this court reviews de novo." *ABF Freight Sys., Inc. v. Int'l Bhd. Of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011). However, "factual determinations relating to standing must be upheld on appeal unless they are clearly erroneous." *Nor-W. Cable Commc'ns P'ship v. City of St. Paul*, 924 F.2d 741, 746 (8th Cir. 1991).

## II. Applicable law

Standing is "an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The principle that the party invoking federal jurisdiction must establish standing ensures "that federal courts do not exceed their authority as it has been traditionally understood" by limiting "the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 334 (2016).

17

The "irreducible constitutional minimum" of standing consists of three elements. *Lujan*, 504 U.S. at 560. The plaintiff (1) must have suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* at 560–61; *Owner-Operator Indep. Drivers Assoc. v. United States Dep't of Transp.*, 878 F.3d 1099, 1101 (8th Cir. 2018) ("*OOIDA*"). The injury-in-fact requirement "requires a plaintiff to allege an injury that is both 'concrete *and* particularized.'" *Spokeo*, 578 U.S. at 334 (quotation omitted; emphasis in original).

A "[c]oncrete injury, whether actual or threatened, [is] that indispensable element of a dispute which serves in part to cast it in a form traditionally capable of judicial resolution." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220–221 (1974); *Bassett v. Credit Bureau Servs., Inc.*, 60 F.4th 1132, 1134-35 (8th Cir. 2023). It "adds the essential dimension of specificity to the dispute by requiring that the complaining party have suffered a particular injury caused by the action challenged as unlawful," *Schlesinger*, 418 U.S. at 221, and ensures that "the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but

18

in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action," *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982); *see also Schumacher v. SC Data Center, Inc.*, 33 F.4th 504, 509 (8th Cir. 2022).

To establish injury, "the complaining party [is] required to allege a specific invasion of th[e] right suffered by him." *Schlesinger*, 418 U.S. at 224 n.14. That invasion must be "actual," "distinct," "palpable," and "concrete," and not "conjectural" or "hypothetical." *Allen v. Wright*, 468 U.S. 737, 750–51, 756, 760 (1984) (internal quotation marks omitted), *abrogated on other grounds by Lexmark Int'l v. Static Control Components*, 572 U.S. 118 (2014). An "[a]bstract injury is not enough," *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974), because injury-in-fact "is not an ingenious academic exercise in the conceivable [but] requires a factual showing of perceptible harm," *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (cleaned up); *see also Bassett*, 60 F.4th at 1137-38.

Federal courts lack jurisdiction to hear suits "claiming only harm to [the plaintiff's] and every citizen's interest in proper application of

19

the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan*, 504 U.S. at 573–74. The desire to seek "vindication of the rule of law . . . does not suffice" to establish standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998); *see also Schumacher*, 33 F.4th at 509 ("In other words, 'an injury in law is not an injury in fact.'") (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021)).

## III. The district court correctly concluded the Committee lacked standing to seek wholesale changes to the district's sealing and docketing practices.

As the Committee and its amici rightly note, standing must be determined separate and apart from the merits of a case. Committee Br. 30-31; Elec. Frontier Fd'n Br. 8; *see Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012). Nonetheless, they devote considerable space to contending the First Amendment and common law support the relief the Committee sought in its amended petition. But the district court did not address the existence of a colorable right of access, whatever its source. Indeed, it never reached those issues, and neither should this Court.

20

### A. Evidence supporting the elements of standing was required because the Committee sought final judgment.

The first basis for the district court's conclusion was the Committee's complete failure to submit any evidence in support of its application. JA-126; R. No. 54 at 5. By itself, this was enough to establish a lack of standing and justify the district court's conclusion that jurisdiction over this matter does not exist. The Supreme Court has made clear the elements of standing are "not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Lujan*, 504 U.S. at 561. Therefore, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* Here, the district court correctly concluded the Committee was required to "offer evidence to support each element of standing" because it had "ask[ed] the Court to enter final judgment in its favor (as opposed to, say, denying a motion to dismiss a complaint)." JA-126; R. No. 54 at 5.; *see OOIDA*, 878 F.3d at 1101.

This procedural observation by the district court was correct. While not technically a summary-judgment motion, the Committee's application and supporting memorandum expressly sought final judgment on the merits. Standing principles pertinent to the summary-judgment phase of a case were thus fully applicable. *See OOIDA*, 878 F.3d at 1101. The district court did not err in citing *Lujan* or *OOIDA*, both of which considered the level of proof required to show standing at the summary-judgment phase.

Indeed, the first case the district court cited did not itself involve summary judgment as such but held "parties seeking direct appellate review of an agency action must prove each element of standing *as if they were moving for summary judgment* in a district court." *Iowa League of Cities v. EPA*, 711 F.3d 844, 869 (8th Cir. 2013) (emphasis added). Just as in *Iowa League*, when it comes to the level of proof required to show standing, the court here was faced with a situation akin to summary judgment in relevant respects. Therefore, it was fully appropriate to expect and require the party seeking final relief to have demonstrated its standing to do so. *OOIDA*, 878 F.3d at 1102.

Appellate Case: 22-3326    Page: 30    Date Filed: 04/21/2023 Entry ID: 5267989

Yet, the Committee presented no evidence of any sort showing a concrete, particularized injury to itself or any of its members. As the district court found, in this proceeding there was simply "no petitioner who is trying to gain access on his or her own behalf to the materials that the Committee seeks to unseal." JA-130; R. No. 54 at 9. Rather, the Committee "wants to unseal these materials *in case some unspecified person may some day want to review them*." *Id.* (emphasis added). That factual finding was not clearly erroneous and therefore must be upheld on appeal. *Nor-W. Cable*, 924 F.2d at 746.

The district court also properly rejected the Committee's argument, in its letter seeking permission to move for reconsideration, that the court unfairly surprised the Committee by converting its application to a summary-judgment motion without affording the Committee an opportunity to present evidence. JA-136; R. No. 56 at 2, 139-40; R. No. 57 at 2-3. As the court noted, the Committee was fully on notice its standing was being questioned, as the government's response had squarely raised the issue. *Id.* In any event, a court may raise standing any time on its own, and every party seeking relief from

23

a federal court has the burden to demonstrate standing at all phases of a case. *See OOIDA*, 878 F.3d at 1102.

**B.      The Committee's allegations failed to show standing.**

The district court also correctly held that, even assuming allegations alone might theoretically suffice, no adequate basis for standing was alleged.

### 1.      The Committee's interest is neither concrete nor particularized.

The Committee's supposed injury from the ongoing sealing of § 2703(d) orders and PR/TTs, and from the district court's practice of docketing search warrants only after a judge signs them, is not concrete and particularized within the meaning of Article III. The Committee claims a broad-based interest in having investigative applications and orders unsealed in order to vindicate the public's alleged right of access to all such materials. As the district court correctly held, this interest is too generalized to establish an injury from the denial of access. JA-130-131; R. No. 54 at 9-10.

Here, as the government explained to the district court, the materials the Committee wished to unseal are in fact required to remain under seal by the local rules for the District of Minnesota. *See*

24

D. Minn. Local R. 49-1(c)(1)(B)(ii), (iii) (mandatory-sealing rule applicable to PR/TTs and § 2703(d) applications and orders). And, the Pen Register Act requires that orders authorizing the installation of PR/TTs be sealed "until otherwise ordered by the court." 18 U.S.C. § 3123(d)(1).

The Committee's amended application thus addressed general court policies and practices rather than presenting a case or controversy under Article III. With regard to PR/TTs, rather than seeking a court order unsealing a particular application and order, the Committee seeks a general order unsealing all PR/TTs, effectively seeking to turn the statutory default of sealing on its head. Accordingly, the Committee's application does not represent a proper invocation of federal jurisdiction. *See, e.g., State v. Biden*, 52 F.4th 362, 371 (8th Cir. 2022) (states failed to allege injury-in-fact required to challenge climate-related policies of federal government).

A litigant lacks standing to "seek wholesale improvement" of a government program "by court decree, rather than in the offices of the Department or the halls of Congress where programmatic improvements are normally made." *Lujan v. Nat'l Wildlife Fed'n*, 497

Appellate Case: 22-3326    Page: 33    Date Filed: 04/21/2023 Entry ID: 5267989

U.S. 871, 891 (1990). Instead, the case-or-controversy requirement requires that "the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action." *Id.*

The Supreme Court follows this principle assiduously. In *Lance v. Coffman*, 549 U.S. 437, 441–42 (2007), the Supreme Court held the plaintiffs lacked standing because "[t]he only injury [they] allege is that the law . . . has not been followed." In *Allen*, 468 U.S. at 754, the Court noted it has "repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." And in *Schlesinger,* 418 U.S. at 219–20, the Court held the "generalized interest of all citizens in constitutional governance . . . is an abstract injury" that is an insufficient basis for standing.

These principles govern this matter. While the district court recognized "a litigant *who is denied access* to materials to which he or she claims a legal right suffers an Article III injury," JA-128; R. No. 54 at 7. (emphasis added), no such litigant was alleged to be present here. Rather, the Committee is a public advocacy organization merely

26

asserting a "right to have the Government act in accordance with law." *Allen*, 468 U.S. at 754.  That is not enough, as the district court rightly concluded.  *See Schumacher*, 33 F.4th at 509 (an "injury in law is not an injury in fact") (cleaned up).

> ## 2. The Committee is not similarly situated to potential litigants who actually suffer injury-in-fact from lack of access.

As the district court noted, the Committee's only interest in this matter is highly abstract.  JA-127-128; R. No. 54 at 6-7.  By contrast, particular categories of interested parties can and do raise legitimate, concrete challenges in individual cases.   For instance, criminal defendants have standing and incentive to challenge the government's use of specific investigative procedures, and they frequently do.  *See, e.g.*, *Carpenter v. United States*, 138 S. Ct. 2206 (2018); *United States v. Wheelock*, 772 F.3d 825, 827-29 (8th Cir. 2014).  Likewise, the press and public can seek access in particular cases where the continued need for secrecy can be decided in the concrete context of a specific investigation.  *See, e.g.*, *In re Gunn*, 855 F.2d at 570-71; *Forbes Media LLC v. United States*, 2021 WL 2935906 (N.D. Cal. July 13, 2021).

27

Service providers and uncharged targets can also challenge the government's use of these types of processes. *See*, *e.g.*, *In re Nat'l Sec. Letter*, 863 F.3d 1110 (9th Cir. 2017); *United States v. Appelbaum,* 707 F.3d at 286–87; *Microsoft Corp. v. U.S. Dept. of Justice*, 233 F. Supp. 3d 887 (W.D. Wa. 2017). Again, however, such cases generally involve motions to unseal particular proceedings, not across-the-board changes to unsealing and docketing procedures like those sought here.

The Committee and its amici protest that, because the materials the Committee seeks are under seal, it is circular to require it to request any particular materials given that their existence cannot be known. *See, e.g.*, Committee Br. 38 n.17 (relief sought is "the only way to vindicate meaningfully the public's rights of access to the judicial records at issue"); Elec. Frontier Fd'n Br. 10 ("secrecy can frustrate the public's ability to even learn about the existence of certain judicial records"); Media Org's Br. 10-11. Secrecy is of course inherent to any sealing practice, but that does not justify circumventing long-settled standing requirements. The mere fact that a policy causes materials to be publicly inaccessible does not mean all members of the public have standing to challenge the policy. Rather, the question of standing

Appellate Case: 22-3326    Page: 36    Date Filed: 04/21/2023 Entry ID: 5267989

still must be analyzed in terms of whether a particular litigant can show all the elements of standing, including an injury-in-fact that is sufficiently concrete and particularized. The district court performed that analysis here, and it was right to do so.

As the above-cited cases demonstrate, individuals actually affected by or directly involved with the investigative procedures at issue often have a strong incentive and real opportunity to challenge sealing practices in the context of a concrete case. To be sure, this can sometimes include journalists and organizations representing them. Thus, the district court correctly observed: "It is true, as the Committee argues, that a litigant who is denied access to materials to which he or she claims a legal right suffers an Article III injury." JA-128; R. No. 54 at 7. But that possibility in no way changes the fact that standing is absent in a matter like this one, where an advocacy group seeks wide-ranging policy changes that do not arise out of a prior request for or denial of any specific materials and are not made on behalf of a particular journalist, media organization, or service

provider and do not involve any individual criminal defendant, case, or investigation.[4]

In short, the district court "commend[ed] the Committee for seeking to protect the public interest in access to judicial records." JA-132. Nonetheless, as the Supreme Court has repeatedly held, "no matter how sincere or deeply committed a plaintiff is to vindicating" its cause, that plaintiff "cannot establish standing by asserting an abstract general interest common to all members of the public." *Carney v. Adams*, 141 S. Ct. 493, 499 (2020) (cleaned up).

Because no injury-in-fact is present, and this dispute is not sufficiently concrete or particularized to give rise to a case or controversy within the meaning of Article III, the district court correctly dismissed the amended application for want of jurisdiction.

## CONCLUSION

---

[4]    For all the same reasons, the district court's alternative conclusion that associational standing would be absent (had the Committee asserted it) was correct.  JA-131-132; R. No. 54 at 10-11.; *see OOIDA*, 878 F.3d at 1101 n.2 (entity may only bring claim if it can show "its members would otherwise have standing to sue in their own right") (cleaned up).  The Committee does not appear to assert associational standing on appeal.  *See* Br. 31 n.13.

30

For all the foregoing reasons, the district court's judgment should be affirmed.

## CERTIFICATE OF COMPLIANCE

The undersigned attorney for the United States certifies this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32.  The brief has 5,854 words, proportionally spaced using Century Schoolbook, 14-point font.  The brief was prepared using Word for Microsoft 365. The undersigned attorney also certifies that the brief has been scanned for viruses and, to the best of our ability and technology, believes it is virus-free.

Dated:  April 19, 2023

ANDREW M. LUGER
United States Attorney

*/s/ David W. Fuller*
By:  DAVID W. FULLER
Assistant U.S. Attorney

Attorneys for Appellee

Appellate Case: 22-3326    Page: 39    Date Filed: 04/21/2023 Entry ID: 5267989